407 So.2d 51 (1981)
Ollie Mae JACKSON, Plaintiff-Appellee,
v.
ST. LANDRY PARISH SCHOOL SYSTEM[1], Defendant-Appellant.
No. 8480.
Court of Appeal of Louisiana, Third Circuit.
November 10, 1981.
Rehearings Denied January 4, 1982.
*52 Young & Burson, I. J. Burson, Jr., Eunice, for defendant-appellant.
Guillory, McGee & Mayeux, Donald L. Mayeux, Eunice, for plaintiff-appellee.
Before CULPEPPER, CUTRER and LABORDE, JJ.
LABORDE, Judge.
Plaintiff Ollie Mae Jackson brought this suit against the defendant school board seeking reinstatement to her former position as a school teacher as well as back pay and damages. The trial court rendered judgment in plaintiff's favor; defendant appealed. Plaintiff answered the appeal.
We affirm.
The substantial issue is whether plaintiff's former position as a teacher was protected by the Teacher Tenure Law, LSA-R.S. 17:441 et seq.
Plaintiff, a certified[2] teacher with a Bachelor of Arts degree, was appointed by the St. Landry School Board on September 17, 1970, to teach second grade students at Plaisance Elementary School for the 1970-71 school term. Plaintiff taught through the last day of March 1971, on which date she was injured in an automobile accident. As a result of her injuries, she requested and was granted an authorized leave of absence without pay covering the remainder of the school term which included the months of April and May.
Plaintiff was reappointed by defendant for the following year but due to strained relations with a few members of the Plaisance Elementary faculty, she was assigned to Lawtell Elementary School. She taught kindergarten students during the 1971-72 school term.
For the 1972-73 school term, plaintiff was reappointed to Lawtell Elementary School. That year she taught third grade students, teaching through June of 1973.
Near the end of the 1972-73 school term, James Billeaudeau, the principal of Lawtell Elementary, informed plaintiff that he was asking the school board not to reassign her to his school because of conflicts she had with some faculty members. Plaintiff then wrote to Henry Monteilh, assistant superintendent in charge of personnel for the St. Landry School Board System, mentioning the discussion and requesting that she be transferred to another school within the system, preferably in Opelousas.
The 1973-74 school term for St. Landry Parish schools began on August 24, 1973. Plaintiff, on that date, was confined to a hospital in New Orleans where she was recovering from injuries received in an automobile accident on July 26, 1973. She had been transferred to New Orleans from Opelousas. At this juncture, plaintiff and defendant offer conflicting stories regarding the events that transpired. Plaintiff claims that while in Opelousas General Hospital, which spanned from the date of the *53 accident until August 11, 1973, she spoke to Mr. Monteilh several times informing him that she was in the hospital and would return to work when she got out. She testified, as did her sister Maudry Darjean, that she received her teaching contract while in the hospital in New Orleans, promptly signed it and returned it to the school board office. She also states that she received a letter from Mr. Billeaudeau, her principal at Lawtell Elementary, telling her to report to school on August 24th and 25th for a workshop. She claims that on one of those two days her sister, and shortly thereafter her friend Ollie Stephens, reminded Mr. Billeaudeau that plaintiff was in the hospital but would return to school as soon as she was discharged. Plaintiff further states that immediately after she was discharged from the hospital in mid-September of 1973, she visited the school board office where she was informed that she had not been reassigned to Lawtell Elementary but that the office was looking for another position for her to fill. It was not until several months later that defendant advised plaintiff to see an attorney because she would not be hired. Plaintiff filed this suit on October 10, 1974.
According to defendant, plaintiff never returned a signed contract to the school board office for the 1973-74 school term. Nor did she communicate with the Lawtell Elementary School office until September 6, 1973, on which date plaintiff and her attorney each wrote a letter advising that plaintiff was hospitalized due to an accident and would be late in reporting to work. It is defendant's position that plaintiff either never achieved the status of a tenured teacher, or that she abandoned or surrendered her position in St. Landry Parish, or that due to her delay in prosecuting her claim, it should be barred.
The removal of a teacher is governed by the Teacher Tenure Act, LSA-R.S. 17:441 et seq., which is designed to protect the job security of teachers in the best interest of the public school system.
Under the Act, to acquire tenure one must meet the definition of a teacher in LSA-R.S. 17:441:
"As used in this sub-part, the word `teacher' means: (1) Any employee of any parish or city school board who holds a teacher's certificate and whose legal employment requires such teacher's certificate."
Clearly plaintiff comes within the definition in LSA-R.S. 17:441(1) in that she was an employee of a parish school board, held a teacher's certificate, and was required by the regulations of the Department of Education to hold a teacher's certificate for her employment.
Having determined that plaintiff is a "teacher" within the intendment of the Teacher Tenure Law, the next inquiry focuses upon plaintiff's status as a teacher, i.e., probationary or permanent.
LSA-R.S. 17:442 provides:
"Each teacher shall serve a probationary term of three years to be reckoned from the date of his first appointment in the parish or city in which the teacher is serving his probation. During the probationary term the parish or city school board, as the case may be, may dismiss or discharge any probationary teacher upon the written recommendation of the parish or city superintendent of schools, as the case may be, accompanied by valid reasons therefor.
Any teacher found unsatisfactory by the parish or city school board, as the case may be, at the expiration of the said probationary term, shall be notified in writing by the board that he has been discharged or dismissed; in the absence of such notification, such probationary teacher shall automatically become a regular and permanent teacher in the employ of the school board of the parish or city, as the case may be, in which he has successfully served his three year probationary term; all teachers in the employ of any parish or city school board as of July 31, 1946 who hold proper certificates and who have served satisfactorily as teachers in that parish or city for more than three consecutive years, are declared *54 to be regular and permanent teachers in the employ of the school board of that parish or city."
The trial court, considering the law hereinabove cited and relating the law to the facts established at trial, made the following findings and conclusions:
"(1) That plaintiff was a teacher as defined by R.S. 17:441 from the beginning of her employment on (at the latest) September 17, 1970, and all times subsequent which are pertinent to this suit; that, although plaintiff did obtain "T" Certificate to enable her to teach kindergarten for the 1971-72 school term, she also held a regular "C" Certificate during that and the other two years involved. No law or Board of Education regulation is pointed out to the effect that the "C" Certificate was inoperative because of her possession of the "T" Certificate.
(2) That for three calendar years after said commencement date, plaintiff served as probationary teacher by teaching all of three teaching years (188 days) except for one day of unauthorized leave in 1971, two months of authorized sick leave in 1971, scattered days of authorized sick leave throughout the period and several days prior to employment for the first school year or prior to her notification of employment in subsequent years. Although the Piper [v. East Baton Rouge Parish School Board] case ([213 La. 885], 35 So.2d 804) holds that the word "year" means a calendar instead of a scholastic year, it is a practical impossibility for an ordinary teacher (as distinguished from a principal or specialized education instructor) to teach 52 weeks in a year. Accordingly, it must be taken that a teacher serves a calendar year by teaching substantially all of the teaching year, subject to the School Board's having the right to act within the three calendar-year term.[3]
(3) That, during said three years' probationary period, plaintiff was not discharged or dismissed by defendant School Board upon written recommendation of the superintendent, accompanied by valid reasons therefor as required by R.S. 17:442, Paragraph 1. See Serignet [v. Livingston Parish School Board] case at 282 So.2d 761; [State ex rel. Nobles v.] Bienville [Parish School Board] case at [198 La. 688], 4 So.2d 649 and Fleming [v. Concordia Parish School Board] case at 275 So.2d 795.
(4) That, at the end of said probationary period and for such reasonable time thereafter as was necessary for defendant to act, plaintiff was not notified in writing of any dismissal or discharge by defendant School Board as required by Revised Statutes 17:442, Paragraph 2.
(5) That, as a consequence of 1, 2, 3 and 4 above, plaintiff became a permanent or tenured teacher after a reasonable time subsequent to the end of her probationary period. See cases cited above."
Upon our review we find no error of the trial court warranting reversal. We would merely add to the cases cited the following, Castille v. Evangeline Parish School Board, 304 So.2d 701 (La.App. 3rd Cir. 1974) writ refused, 309 So.2d 342 (La.1975); McGraw v. Iberia Parish School Board, 310 So.2d 139 (La.App. 3rd Cir. 1975) writ denied, 313 So.2d 827 (La.1975); Palone v. Jefferson Parish School Board, 306 So.2d 679 (La. 1975); and Coburn v. Vernon Parish School Board, 364 So.2d 231 (La.App. 3rd Cir. 1978).
*55 Upon attaining the status of permanent teacher, the Teacher Tenure Law sets forth a detailed procedure which must be adhered to in order to perfect the proper removal of that teacher.
LSA-R.S. 17:443 provides:
"A permanent teacher shall not be removed from office except upon written and signed charges of wilful neglect of duty, or incompetency or dishonesty, or of being a member of or of contributing to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the state of Louisiana, or of advocating or in any manner performing any act toward bringing about integration of the races within the public school system or any public institution of higher learning of the state of Louisiana, and then only if found guilty after a hearing by the school board of the parish or city, as the case may be, which hearing may be private or public, at the option of the teacher. At least fifteen days in advance of the date of the hearing, the school board shall furnish the teacher with a copy of the written charges. The teacher shall have the right to appear before the board with witnesses in his behalf and with counsel of his selection, all of whom shall be heard by the board at the said hearing. Nothing herein contained shall impair the right of appeal to a court of competent jurisdiction.
If a permanent teacher is found guilty by a school board, after due and legal hearing as provided herein, on charges of wilful neglect of duty, or of incompetency, or dishonesty, or of being a member of or of contributing to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the state of Louisiana, or of advocating or in any manner performing any act toward bringing about integration of the races within the public school system of the state of Louisiana, and ordered removed from office, or disciplined by the board, the teacher may, not more than one year from the date of the said finding, petition a court of competent jurisdiction for a full hearing to review the action of the school board, and the court shall have jurisdiction to affirm or reverse the action of the school board in the matter. If the finding of the school board is reversed by the court and the teacher is ordered reinstated and restored to duty, the teacher shall be entitled to full pay for any loss of time or salary he or she may have sustained by reason of the action of the said school board."
The record clearly reflects that his procedure was not followed. Since the alleged removal of plaintiff did not comply with the Teacher Tenure Law, it has no legal effect. We hold, as did the trial judge, that plaintiff is entitled to be reinstated to a teaching position in the St. Landry School system.
The School Board seeks to neutralize this procedural deficiency by arguing that in any event, plaintiff abandoned or surrendered her status of permanent teacher by seeking other employment and by delaying in prosecuting her claim. We hold that a discussion of plaintiff's alleged action or inaction is irrelevant due to the fact that the Teacher Tenure Law places the onus on the School Board to effect a proper removal and not on the teacher.
Defendant next contends that plaintiff's claim is barred by either prescription or estoppel by laches.
We will discuss the prescription issue first. The trial court, in this regard, cited LSA-R.S. 17:443 B which grants a permanent teacher, removed after a formal hearing and a finding of guilty, one year from that finding to petition the district court for a hearing to review the school board's action. The trial court then held:
"That the one-year limitation in R.S. 17:443-B is inapplicable because there was no formal board hearing; that defendant invokes no other specific prescription statute in either pleading or brief and the plea of prescription must be denied."
We find no error in the reasoning used and conclusion reached by the lower court in deciding the issue of prescription.
*56 Equally without merit is the defendant's contention that plaintiff's claim is barred by estoppel by laches.
The doctrine of estoppel by laches is an equitable one. It addresses itself to the evidentiary effect of delay. It is based on the injustice that might result from the enforcement of long neglected rights, the difficulty, if not the impossibility, of ascertaining the truth of a matter in controversy, and doing justice between the parties and on the public policy of discouraging stale and antiquated claims in the interest of the peace and repose of society. Barnett v. Develle, 289 So.2d 129 (La.1974). When the claims are asserted against public bodies and involve the public fisc, in order to invoke the doctrine of estoppel by laches, defendant must prove (1) unreasonable delay by the plaintiff in presenting those claims that arose within one year prior to suit and (2) substantial prejudice to or upset of the public body's fiscal affairs. Bradford v. City of Shreveport, 305 So.2d 487 (La. 1974); and Devillier v. City of Opelousas, 247 So.2d 412 (La.App. 3rd Cir. 1971).
Returning to the facts, plaintiff's attorney filed the original suit on October 10, 1974, alleging breach of contract. In paragraph 7 of the original petition, plaintiff alleged that she was beginning her fourth year as a teacher which may give her tenure in the St. Landry System.
Plaintiff's attorney filed a supplemental and amended petition on December 23, 1974, amending paragraph 7 of the original petition to read as follows:
"Petitioner was not given her assignment at Lawtell Elementary School, despite the fact that petitioner was assigned to that school on August 13, 1973 and that she was beginning her fourth year as a teacher which gave petitioner tenure in the St. Landry Parish School Board." (Emphasis ours)
From the beginning, defendant School Board was aware that plaintiff wanted her job back when she presented herself on September 17, 1973, ready, willing and able to begin working. She had recovered from an automobile accident. She testified that the School Board led her to believe that she would get a job during that year but they finally told her to hire an attorney. She did so and on September 10, 1974 Paul Valteau wrote to Mr. Monteilh asking for a hearing before the school board to discuss their failure of rehiring Ms. Jackson for the 73-74 school term.
In addition, plaintiff's attorney corresponded with defendant's attorney about plaintiff's request and right to be reinstated as a tenured teacher in the parish system. On January 9, 1975, plaintiff sent a letter to the defendant school board asking for a job. On September 27, 1977, David Dennie enrolled as counsel for plaintiff. In December of 1978, plaintiff's present attorney was hired, amendments were filed and the case proceeded to trial.
The lower court considered all of this and in written reasons held:
"Estoppel by laches is not applicable herein because, even if the suit filing was unduly delayed, payment of the amount then (at suit filing) due would not prejudice the orderly fiscal processes of the defendant School Board. Although payment of the amount ultimately awarded herein might have that consequence, all of the award herein, except the first year's earnings, accrued after suit and resulted from the inaction of both parties; and the School Board was on full notice as to the claim and its ultimate exposure from, at the latest, suit filing. See Jefferson Parish School Board case, above; Bradford [v. City of Shreveport] case at 305 So.2d 487; Gibson [v. Doyle] case at 307 So.2d 679 and Devillier [v. City of Opelousas] case at 247 So.2d 412."
Finding no manifest error, we affirm.
As a final matter, plaintiff has answered this appeal requesting an increase in the amounts awarded.
The trial court awarded plaintiff $57,900.00 in back pay for the years 1973-1980. The lower court also ordered defendant to reinstate plaintiff in the St. Landry School system within a reasonable time after the finality of the judgment with plaintiff, until *57 reinstatement, being entitled to further earnings for the beginning of the 1980-81 school year at the rate of $14,173.00 per year and at the proper rate for any years thereafter. These awards were then offset by money plaintiff earned during the period ($15,995.40) as well as withholding taxes and employee teacher retirement contributions. Legal interest from date of judicial demand was allowed on all amounts due plaintiff.
Plaintiff asks this court to affirm the judgment in all respects except that she be awarded back pay for each school year from 1973 to the present and until reinstated at the rate she would have been paid by the St. Landry School Board, that no offset of earnings and no deductions of taxes and retirement be made, and that she be awarded an additional $20,000.00 for mental anguish, suffering, anxiety and attorneys fees.
Absent an initial determination that the trial court's very great discretion in the award of damages has been abused under the facts of this case, the reviewing court should not disturb the trier's award. Wilson v. Magee, 367 So.2d 314 (La.1979), Reck v. Stevens, 373 So.2d 498 (La.1979). The record reveals no such abuses.
For the above reasons the judgment appealed from is affirmed. Costs are assessed against the defendant-appellant in the amount of $1,008.05, as provided by law.
AFFIRMED.
CULPEPPER, J., dissents and assigns reasons.
CULPEPPER, Judge, dissenting.
I can agree with the majority that the plaintiff acquired tenure in 1973. Although there is much equity in favor of the School Board's position that they thought the plaintiff had decided to quit teaching, because she did not obtain a contract to teach for the 1973-74 school year and did not advise the School Board until a month after school had started in the fall of 1973 that she wanted to teach, nevertheless, construing LSA-R.S. 17:442 strictly, the School Board should have notified plaintiff in writing at the end of her 3-year probationary term that she was dismissed. The statute provides that in the absence of such notification, the teacher automatically becomes tenured. There was no such notice by the School Board in the present case.
However, I think laches clearly bars plaintiff's claim. The majority holds that since plaintiff filed suit on October 10, 1974, the School Board had notice from that time as to the full amount of plaintiff's claim and the School Board's ultimate exposure, thus giving the Board an opportunity to adjust its budget accordingly and avoid prejudice to the public fisk. I cannot agree. A close examination of the original and supplemental petitions filed by plaintiff in 1974 and the amendment of these pleadings in 1979, shows that the School Board did not have notice until 1979 that plaintiff was claiming back pay from 1973 to 1979 and also requesting reinstatement as a tenured teacher.
The original petition filed by plaintiff on October 10, 1974 was entitled a suit for "Breach of Contract for Personal Services." The petition alleged that plaintiff had a contract to teach kindergarten at the Lawtell Elementary School for the 1973-74 school year. The prayer of this petition is for loss of wages for the 1973-74 and the 1974-75 school years, totaling $14,400 damages to plaintiff's professional credentials in the sum of $20,000 and attorney's fees in the sum of $10,000, totaling $44,400. There is no prayer for recognition of tenure or for reinstatement. Of course, plaintiff did not as a fact have a contract to teach at Lawtell Elementary or at any other school in St. Landry Parish for the 1973-74 school year. No such contract was proved on the trial of this case.
On December 23, 1974, plaintiff filed a supplemental and amending petition adding an allegation that on September 17, 1973 (which was one month after school started in August of 1973) petitioner presented herself to the principal at Lawtell ready and willing to take up her teaching assignment. In the amended petition, she again prays only for wages lost under the alleged contract. *58 She does not pray for recognition of tenure or for reinstatement.
Of course, the School Board knew that she did not have a contract to teach for the 1973-74 school year. Moreover, the School Board had plaintiff's letter of date May 23, 1974 addressed to Mr. Henry Monteilth, Jr., assistant superintendent, requesting a transfer from Lawtell Elementary and seeking a new assignment to a school in Opelousas. The majority opinion states plaintiff's letter said "preferably in Opelousas", but the letter clearly states "I am not seeking a transfer outside of Opelousas." From this, the School Board was clearly justified in thinking that if plaintiff could not be assigned to a school in Opelousas she did not want to teach. Mr. Monteilth testified that he tried to find an assignment for plaintiff in Opelousas and was unable to do so.
The School Board reasonably believed that they had a perfect defense to plaintiff's original and supplemental petitions filed in 1974. The Board knew plaintiff had no contract to teach in 1973-74, it had her letter specifying that she requested an assignment to teach only in Opelousas, and the Board knew that it could not find an assignment for plaintiff in Opelousas.
After 1974, plaintiff took no further action in her suit for almost five years. She employed a new lawyer and filed a supplemental petition on April 9, 1979 seeking loss of wages for 1973-79 in the sum of $75,000, damages to petitioner's professional credentials in the sum of $100,000, attorney's fees in the sum of $20,000, and loss of future income in the sum of $150,000, totaling $345,000. The prayer of her 1979 amended petition is for judgment in the sum of $345,000, recognition of her tenure and reinstatement as a teacher. Thus, plaintiff waited for five years after filing her original and supplemental petitions in 1974 before claiming for the first time any wages beyond 1975 and requesting recognition of her tenure and reinstatement as a teacher. I think these claims are barred by laches.
The leading case in this State on laches is Fields v. Rapides Parish School Board, 231 La. 914, 93 So.2d 214 (1957), involving a tenured teacher who failed to report for duty at the beginning of the school term in September of 1946. In August of 1948 the school superintendent advised her that she had been replaced. She filed two suits for reinstatement, but both were dismissed on dilatory exceptions. Two years and eight months later she filed another suit, which was dismissed for laches. In affirming the district court, our Supreme Court stated:
"`The rule that laches on the part of such public employee will bar his claim for reinstatement is not based on any law of prescription or limitation of actions, but it arises from reasons of public policy. The processes of government must go on and employees and officials must be paid out of public revenue for carrying on the functions of government. Where a discharged employee sits idly by for an unreasonable length of time without pressing his claim for reinstatement, those charged with the duty of securing the necessary working personnel cannot hold up the administrative functions of government awaiting a decision on the part of the discharged employee as to what course he will take. The prevention of duplication of positions and the payment of double salaries requires such discharged employee, not only to press his demands, but also to submit his claim to the courts for adjudication without unnecessary delay.'"
In the present case the plaintiff waited much longer than the plaintiff in Fields to press her claim for reinstatement and back pay. I think she is clearly barred by laches. Her suit should be dismissed at her costs.
For the reasons assigned, I respectfully dissent.
NOTES
[1] By Supplemental and Amending Petition, the St. Landry Parish School Board, instead of the St. Landry Parish School System, was named as defendant.
[2] The record shows that plaintiff held a type "C" certificate in her field which was elementary education. This type "C" certificate was valid for three years. During that time plaintiff was also issued a temporary (type "T") certificate for one year enabling her to teach kindergarten which was out of her field of certification.
[3] Although the trial court's conclusion that plaintiff successfully completed her three year probationary term is correct, its reasoning in reaching that conclusionin particular its failure to follow the Piper caseis incorrect. This court favorably cited the Piper case in Coburn v. Vernon Parish School Board, 364 So.2d 231, 234 (La.App. 3rd Cir. 1978) which interpreted the word "year", as used in the teacher's tenure law providing that each teacher shall serve a probationary term of three years, to mean the calendar year of twelve months from the date of first appointment, and not a scholastic year. Using this correct interpretation it is clear that plaintiff, who was appointed September 17, 1970, and thereafter reappointed in September of 1971 and September of 1972, and who as of September 17, 1973, had not been fired, did under these facts, successfully serve a probationary period of three calendar years reckoning from her date of appointment, September 17, 1970.