452 So.2d 264 (1984)
Anthony J. PIZZOLATO
v.
STATE of Louisiana, Through the BOARD OF ELEMENTARY AND SECONDARY EDUCATION.
No. 83 CA 0766.
Court of Appeal of Louisiana, First Circuit.
May 30, 1984.
*265 Charles McCowan, Baton Rouge, for plaintiff-appellee Anthony J. Pizzalato.
Jesse James Marks, New Orleans, for defendant-appellant State of La., Through the Board of Elementary & Secondary Education.
Before COVINGTON, COLE and SAVOIE, JJ.
SAVOIE, Judge.
Defendant appeals the trial court's holding that defendant violated the Louisiana Teacher Tenure Laws, L.S.A.-R.S. 17:43, et seq., and awarding plaintiff $475.00 per month as a result thereof. Plaintiff, answering *266 the appeal, seeks an increase in the award.
Plaintiff is the Assistant Superintendent for Instruction at the Louisiana School for the Visually Impaired[1] and has attained tenure in this position. Prior to December 15, 1980, plaintiff had been provided with on-campus housing, one free meal per day, and other associated benefits (i.e., payment of utilities, insurance and maintenance costs on the house) since his employment at the school in 1968. The facts which gave rise to the termination of these benefits are as follows.
During the 1978-1979 school year, the two racially segregated Louisiana State Schools for the Blind were merged into the Louisiana School for the Visually Impaired. As a result of this merger, Mr. Maefield Kiper, formerly employed at the all-black school, was made Assistant Superintendent for Administration at the Louisiana School for the Visually Impaired. Although he and plaintiff were supposed to be on the same level of heirachy, Mr. Kiper was not provided with housing nor given a housing allowance. This differential treatment resulted in Mr. Kiper's filing a complaint with the Equal Employment Opportunity Commission (EEOC), alleging discrimination.
Defendant compromised Mr. Kiper's claim by agreeing to pay him a housing allowance of $475.00 per month, retroactive from July 19, 1979 until June 30, 1980, at which time the legislature would address his claim. The legislature subsequently appropriated an amount sufficient to compensate Mr. Kiper in conformity to the terms of the settlement.
On July 24, 1980, without prior notice to plaintiff or Mr. Kiper, the Board of Elementary and Secondary Education passed a motion eliminating both the housing and the housing allowance for the two assistant superintendents. Plaintiff was notified of this action by letter and given 90 days to vacate the house. On September 16, 1980, plaintiff submitted a request that the Board reconsider its action. The matter was never placed on the agenda nor considered by the Board at any regular meeting. Plaintiff's deadline for relocation was subsequently extended to December 15, 1980, but the prior order to vacate was not reconsidered.
As a result, plaintiff filed suit against the State of Louisiana, through the Board of Elementary and Secondary Education, alleging violations of the Louisiana Teacher Tenure Statutes for certified teachers in special schools, L.S.A.-R.S. 17:43, et seq. Plaintiff contended that his rights as a tenured teacher were violated when defendant took away the on-campus housing and other associated benefits.
The trial court found that the defendant's action resulted in a substantial reduction in plaintiff's pay which was tantamount to a demotion. Further, it found that since the defendant failed to follow the procedural requirements of L.S.A.-R.S. 17:45 in reducing plaintiff's pay, the action was null and void, and of no effect. The court went on to find that the violation amounted to a reduction in pay of $475.00 per month for plaintiff and ordered defendant to reinstate plaintiff with full back salary in that amount.
Defendant appealed, alleging the trial court erred in finding a violation of the Teacher Tenure Law and in failing to apply the law of contract.[2] Plaintiff answered the appeal, requesting that the judgment be modified by increasing the award from $475.00 per month to $975.00 per month.

*267 1. TEACHER TENURE LAW
L.S.A.-R.S. 17:45 sets forth the regulations for probation and tenure of teachers in special schools. It provides in pertinent part, that:
"(3) Whenever a teacher who has acquired permanent status, as set forth in this Section, in a special school is promoted from a position of lower salary or status in such special school to a position of higher status or salary, such teacher shall serve a probationary period of three years in the higher position before acquiring permanent status therein, but shall retain the permanent status acquired in the position of lower status or salary from which he or she was promoted.
"During the probationary period in the position to which promoted, a teacher shall not be disciplined, removed, or demoted to the lower position from which he was promoted except in compliance with the provisions of Subsection A(1) of this Section. At the expiration of the probationary period in the higher position, a teacher, unless removed or demoted in accordance with Subsection A(1) of this Section, shall automatically acquire permanent status in the higher position and thereafter may not be disciplined, removed, or demoted from such higher position in compliance with the provisions of Subsection A(2) of this Section. * * *"
We believe this statute should be interpreted in accordance with the interpretation of its counterpart, L.S.A.-R.S. 17:444, which provides for promotions of probationary and tenured teachers in parish and city schools.[3]
The latter provision has been deemed to protect tenured teachers "from removal, demotion or reduction in pay under any and all circumstances save those specified in the statute." (Emphasis added). McCoy v. Tangipahoa Parish School Board, 308 So.2d 382 (La.App. 1st Cir.1975), writ denied, 310 So.2d 856 (La.1975). Further, under that statute, a reduction in pay has been considered as a transfer to a lower position. Pasqua v. Lafourche Parish School Board, 408 So.2d 438 (La.App. 1st Cir.1981).
Likewise, we conclude that a reduction in "salary" will constitute a transfer to a lower position or a demotion within the meaning of L.S.A.-R.S. 17:45. In reaching this conclusion, we interpret the word "salary" in a broad sense to mean "a reward or recompense for services performed"[4] and to include "emoluments" of the office.
The above conclusion requires us to determine whether the termination of plaintiff's on-campus housing and associated benefits resulted in a reduction in "salary" within the meaning of the statute. We believe that it did.
The record reflects that as compensation for his services at the school, plaintiff was offered, and accepted, a monthly sum of money plus on-campus housing and one free meal per day. Particularly with respect to the on-campus housing, we note the testimony of Mr. K.N. Orillion, the retired superintendent of the school who recruited plaintiff. He testified that he offered plaintiff the house as an inducement for plaintiff to come to work at the school. Mr. Orillion stated that without the on-campus housing, he did not believe plaintiff would have accepted a position at the school. Further, Mr. Orillion admitted that the housing was taken into consideration in fixing the monthly sum that was paid to plaintiff. Plaintiff also testified that the on-campus housing was a part of his "salary." The record reveals that at the time Mr. Orillion recruited plaintiff, plaintiff owned a home in Plaquemine and received from his teaching position in *268 Plaquemine a monthly dollar amount greater than that offered by Mr. Orillion. In sum, plaintiff's testimony indicates that only the inclusion of the on-campus housing as part of his "salary" made the offer by Mr. Orillion an acceptable proposition. Further, the record discloses that the value of the housing was considered in calculating plaintiff's retirement benefits.
This evidence reflects that the on-campus housing and free meals were part of plaintiff's "salary." Further, the record reflects that these emoluments were terminated by defendant on December 15, 1980. The termination of these emoluments resulted in a reduction in plaintiff's "salary" and, therefore, a demotion within the meaning of L.S.A.-R.S. 17:45(A)(3).
In order to demote a tenured teacher under L.S.A.-R.S. 17:45(A)(3), defendant is required to comply with the provisions of L.S.A.-R.S. 17:45(A)(2).[5] There is no evidence in the record that defendant complied with that subsection nor does defendant contend that it did comply therewith. This failure to comply with the statute constitutes a violation by defendant of the Teacher Tenure Law.

2. LAW OF CONTRACT
Defendant argues hereunder that the trial court erred in not applying the law of contract in this instance. Defendant notes that plaintiff's petition stated that defendant provided plaintiff living quarters pursuant to an agreement. Further, defendant points out that the trial court concluded that Mr. Orillion promised the house to plaintiff only for as long as Mr. Orillion was superintendent of the school. Based thereon, defendant contends that once Mr. Orillion retired, which was prior to the termination of plaintiff's emoluments, plaintiff was no longer entitled to the on-campus housing.
We find no merit in this contention for several reasons. First, plaintiff testified that on-campus housing was being provided for him and his family. His testimony fails to reveal that he understood the housing to be provided only as long as Mr. Orillion was superintendent. Further, we find that such a limitation would be contrary to both parties' testimony as well as to our conclusion that the housing was included within plaintiff's "salary." Secondly, the provisions of the Teacher Tenure Law are read into any such contracts and form a part thereof. See State ex rel. Nobles v. Bienville Parish School Board, 198 La. 688, 4 So.2d 649 (1941). To hold that the defendant could escape the provisions of the Tenure Law by contracting for a reduction in compensation at a future time would render the Teacher Tenure Law meaningless and permit the demotion of teachers in derogation of the provisions of that statute.

3. AWARD
The trial court awarded plaintiff $475.00 per month as a result of defendant's violation of the Teacher Tenure Law. By answer to defendant's appeal, plaintiff seeks to have this amount increased to $975.00 per month. Plaintiff argues the $475.00 award fails to include the insurance, utilities and maintenance costs.
We find no error in the trial court's award nor do we find merit in plaintiff's argument. Mr. John LeJeune, who was *269 accepted by the court as an expert in the field of real estate appraisal, testified that $475.00 was the monthly rental value of the property. Further, the record reflects that $475.00 per month was the amount paid to Mr. Kiper as a housing allowance. This amount presumably included the value of the above-mentioned associated benefits since the purpose of the housing allowance was to equalize Mr. Kiper's compensation with that of plaintiff.[6]
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are to be borne by the defendant, State of Louisiana, Through the Board of Elementary and Secondary Education, State Department of Education, in the amount of One thousand, one hundred sixty-four and 82/100 ($1,164.82) Dollars.
AFFIRMED.
NOTES
[1] The Louisiana School for the Visually Impaired is a "special school." L.S.A.-R.S. 17:43 and 17:4.1.
[2] In brief, defendant set forth three assignments of error, to-wit:

(1) The trial court erred in finding a violation of the Teacher Tenure Law; (2) the court erred in finding that defendant's action constituted a demotion or removal from office; and (3) assuming the court correctly applied the Teacher Tenure Law, it erred in not applying the law of contract. Defendant's first and second assignments of error go to the question of whether the Teacher Tenure Law was violated and will be addressed as one issue.
[3] We note one relevant distinction between the two statutes. L.S.A.-R.S. 17:45 refers to promotions in terms of moving from a position of "lower salary or status ... to a position of higher status or salary"; whereas, L.S.A.-R.S. 17:444 defines a promotion only in terms of moving from a position of "lower salary to one of higher salary." However, in the instant case, we are concerned only with the issue of salary.
[4] Black's Law Dictionary 1200 (5th ed. 1979).
[5] L.S.A.-R.S. 17:45(A)(2) provides, in pertinent part:

"(2) A permanent teacher in a special school shall not be removed from office except upon written and signed charges of wilful neglect of duty, or incompetency, or dishonesty, and then only if found guilty after a hearing by the board or by a committee of the board, which hearing may be public or private at the option of the teacher. At least fifteen days in advance of the date of the hearing, the board shall furnish the teacher with a copy of the written charges, the teacher shall have the right to appear before the board, or committee of the board, with witnesses in his behalf and with counsel of his selection, all of whom shall be heard by the board or committee of the board at the hearing. Any finding of a committee of the board shall be reviewed and acted upon by the full board. The board may set aside or modify the findings of the committee of the board. Nothing herein contained shall impair the right of appeal to a court of competent jurisdiction. * * *"
[6] Mr. Kiper was not being provided with housing as was plaintiff.