499 So.2d 690 (1986)
Yvonne S. MEYERS, Plaintiff-Appellant,
v.
SABINE PARISH SCHOOL BOARD, Defendant-Appellee.
No. 86-67.
Court of Appeal of Louisiana, Third Circuit.
December 10, 1986.
Writ Denied February 6, 1987.
*691 Lauren Gaye Coleman of Bolen and Erwin, Alexandria, for plaintiff-appellant.
Robert E. Plummer, Asst. Dist. Atty., Mansfield, Elizabeth Pickett, Many, for defendant-appellee.
Before LABORDE, KNOLL and KING, JJ.
LABORDE, Judge.
Yvonne S. Meyers, a tenured teacher, brought suit against the Sabine Parish School Board, her former employer, for reinstatement pursuant to the Louisiana Teachers' Tenure Act, LSA-R.S. 17:441-544. Plaintiff asserts that procedural and substantive deficiencies concerning her removal hearing vitiated any legal effect of her discharge by the school board. The school board insists that plaintiff's due process rights were honored and that plaintiff's guilt was established by substantial evidence. After carefully reviewing the record, we find substantial compliance with the Tenure Act and find a rational basis for the Board's determination of plaintiff's willful misconduct. For these reasons, we affirm.

FACTS
Ms. Meyers worked for the Sabine Parish School Board as a reading instructor at the Zwolle Intermediate School in Zwolle, Louisiana. She had worked as a teacher for thirty-one (31) years and indisputably qualified as a tenured or "permanent" teacher under LSA-R.S. 17:442.
Zwolle Intermediate evidently has a cold gym. During the less temperate months, physical education students refuse to dress-out *692 for class. This situation became acute during fourth period where a substitute teacher had replaced the regular coach who was on leave. The school's principal, William Ruffin, grew concerned and attempted to alleviate the problem by having the recalcitrant students report to him. Thereafter, he would assign the students to a teacher with a "free" or "planning" period. This intervention technique: (1) removed nonparticipating students from the gym bleachers before they became troublesome; (2) encouraged students to dress-out for class; (3) allowed maximum flexibility for the principal; and (4) was widely accepted by the teachers at Zwolle Intermediate and by the Sabine Parish School District at large.
Both plaintiff and Mr. Ruffin testified that from time to time students from the P.E. class would report to Ms. Meyers for supervision. The number of students fluctuated as did the number of encumbered days per week. Plaintiff recalls that she was called upon to take this onerous duty virtually everyday while Mr. Ruffin avers that he split the burden equitably between the two teachers with a free period at that timeMs. Meyers and Ms. Henderson. Mr. Ruffin noted that not all teachers were granted planning periods and that teachers in no way were vested with a right to free periods. Ms. Meyers accepted this extra responsibility, with reticence, at least until March 16, 1984.
Plaintiff and Principal Ruffin offer competing versions of what actually occurred during the fourth period of that day. Plaintiff states that unassigned students entered her classroom and stayed there as she attempted to complete her duty of recording grades. After an hour of unruly behavior, the students left for their next assigned classes. One of the students, Sarah Bolton, supports Ms. Meyers version of the incident. Mr. Ruffin states that several children reported to him in the school lunchroom where he was having lunch with two members of the Sabine Parish School Board, E.B. Malmay and Harold Stewart. The principal told the students to go to Ms. Meyers' class for the period. Minutes later, the students returned saying Ms. Meyers refused entry to her classroom. According to Mr. Ruffin, the children told him that Ms. Meyers locked her door and went to the library. At this point, Mr. Ruffin says he walked with the children to Ms. Meyers' room, unlocked the door and allowed the students to remove their belongings which had been left there prior to the lunch. Mr. Ruffin then walked the students to Ms. Henderson's room where the students remained for the compliment of the period.
The School Board members present at lunch testified that after the students were sent to Ms. Meyers' class they returned. Mr. Malmay could not remember the teacher's name, but Harold Stewart specifically recalled the situation and corroborated Mr. Ruffin's testimony.[1]
Mr. Ruffin admits to not formally requesting that Ms. Meyers accept the students and that there was a possible "breakdown in communications" between the principal and teacher via the students. Mr. Ruffin stated that prior to the March 16th incident, Ms. Meyers had always accepted students during her free period. Further, Mr. Ruffin admits that he did not request *693 from Ms. Meyers an explanation of her apparent insubordination.
The next incident occurred on April 2, 1984, again in the fourth period. This time the students came to Mr. Ruffin's office from the gym where they had refused to dress out. Remembering the March 16th fiasco, Mr. Ruffin decided to escort the students to plaintiff's room. Again, two competing versions of truth were offered. Mr. Ruffin avers that plaintiff was in her room when he mandated that she supervise the students; whereupon, plaintiff objected noting the unfairness of the situation, but stayed with the students. Mr. Ruffin returned to his office. Minutes later, his intuition led him back to plaintiff's room to confirm plaintiff's compliance with his order. Not surprisingly, the class lacked its teacher, Ms. Meyers, who was later seen by Mr. Ruffin sitting at a table in the library. Mr. Ruffin secured the room by having another teacher watch the students. Mr. Ruffin returned to his office and called Mr. Malmay of the school board to witness plaintiff's insubordination. Plaintiff avers that, as usual, she acquiesced to the extra duty notwithstanding the fact that she was leaving the room to copy material for her afternoon classes. Plaintiff admits that she briefly left the room, but only for the limited purpose of fulfilling her teaching duties for her regularly assigned classes.
Mr. Malmay's testimony lends credibility to Mr. Ruffin's version of the incident. Upon arrival, Mr. Malmay went to the library and saw Ms. Meyers just sitting there with a book in her hand. In the hall, Mr. Malmay and Ms. Meyers discussed the propriety and fairness of forcing students on a teacher during her planning period. This conversation was overheard by at least one of the unsupervised students, Sarah Bolton, who characterized the discussion as an "argument."
Mr. Ruffin complained to the school board which notified plaintiff that a termination hearing was scheduled for July 18, 1984, by letter dated June 21, 1984. The board unanimously found plaintiff guilty of two separate incidents of willful neglect. Plaintiff filed this action in forma pauperis for reinstatement pursuant to the Louisiana Teachers' Tenure Act. The trial court denied plaintiff the privilege of proceeding in forma pauperis after plaintiff's finances were scrutinized. After reviewing the school board's record, the Eleventh Judicial District Court dismissed plaintiff's suit finding Ms. Meyers' termination was procedurally and substantively correct. Plaintiff appeals specifying four errors.
SPECIFICATIONS OF ERROR
"I. The Trial Court erred in finding that the Sabine Parish School Board followed the procedural guidelines mandated by the Louisiana Teacher Tenure Act.
II. The Trial Court erred in its decision regarding admissibility of Evidence at the Trial on the Merits.
III. In the alternative, the Trial Court erred in its determination that the charges brought against Yvonne Meyers were supported by substantial evidence and constituted legal grounds for her termination.
IV. The Trial Court erred in concluding that plaintiff was not entitled to proceed in Forma Pauperis."

I.
Plaintiff charges that the School Board deprived plaintiff of due process by failing to follow the strict mandates of LSA-R.S. 17:443, which in pertinent part reads:
"A. A permanent teacher shall not be removed from office except upon written and signed charges of willful neglect of duty, or incompetency or dishonesty, or of being a member of or contributing to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the state of Louisiana, and then only if found guilty after a hearing by the school board of the parish or city, as the case may be, which hearing may be private or public, at the option of the teacher. At least twenty days in advance of the date of the hearing, the superintendent with approval *694 of the school board shall furnish the teacher with a copy of the written charges. Such statement of charges shall include a complete and detailed list of the specific reasons for such charges and shall include but not be limited to the following: date and place of alleged offense or offenses, names of individuals involved in or witnessing such offense or offenses, names of witnesses called or to be called to testify against the teacher at said hearing, and whether or not any such charges previously have been brought against the teacher. The teacher shall have the right to appear before the board with witnesses in his behalf and with counsel of his selection, all of whom shall be heard by the board at said hearing. For the purpose of conducting hearings hereunder the board shall have the power to issue subpoenas to compel the attendance of all witnesses on behalf of the teacher. Nothing herein contained shall impair the right of appeal to a court of competent jurisdiction."
On June 21, 1984, Larry Skinner, the superintendent of schools for Sabine Parish, sent a certified letter notifying plaintiff that she had been charged with willful neglect of duty and that a hearing on the charge would be held before the school board on July 18, 1985. The letter further advises that plaintiff has the right to call witnesses and to be represented by counsel at either an open or closed meeting, at plaintiff's choice. The charge, submitted by Mr. Ruffin, reads:
"1. During the period of March 16, 1984, Mrs. Yvonne Meyers was asked to allow students that were not dressing out for Physical Education to stay in her room and study for an hour. Mrs. Meyers refused to let the students enter her classroom. She locked the door and went to the library. I went to her room to let the students get their books and sent the students to Mrs. Henderson's classroom. Mrs. Henderson had kept the students the day before. Mr. Harold Stewart and Mr. E.B. Malmay (members of the school board) were witnesses to this incident.
2. During the period of April 2, 1984, I carried a group of students to Mrs. Meyers' room and asked that she would allow the students to remain with her for an hour. Mrs. Meyers said she would not stay with them. I told Mrs. Meyers I needed for her to stay with the students. I left the students in her room. I later returned to Mrs. Meyers' room to find that she had gone to the library and left the students unsupervised. I returned to the office and immediately called Mr. Malmay to have him come and witness the incident. Mr. Malmay talked with Mrs. Meyers (in my presence). She told him this was her free hour and she did not feel she should keep the students."
This letter conveys most of the information mandated by LSA-R.S. 17:443, but neglects to specify: "names of witnesses called or to be called to testify against the teacher at said hearing, and whether or not any such charges previously have been brought against the teacher." Plaintiff submits that since the requirements of LSA-R.S. 17:443 were not strictly complied with, that the Board's termination was without legal effect, citing Pizzolato v. State Board of Elementary & Secondary Education, 452 So.2d 264 (La.App. 1st Cir. 1984); Jackson v. St. Landry Parish School System, 407 So.2d 51 (La.App. 3d Cir.1981), writ denied, 412 So.2d 98 (La. 1982); and Tate v. Livingston Parish School Board, 391 So.2d 1240 (La.App. 1st Cir.1980), affirmed after remand, 444 So.2d 219 (La.App. 1st Cir.1983), writ denied, 446 So.2d 314 (La.1984). These cases are clearly distinguishable. In Pizzolato, the plaintiff was demoted without any hearing by the school board. Pizzolato, 452 So.2d at 266. In Jackson, the plaintiff was removed without a board hearing. Jackson, 407 So.2d at 55. In Tate, the plaintiff was notified that he would not be rehired as a coach. On May 31, 1977 he was told that a board hearing was set for *695 his case on June 2, 1977. Prior to that hearing, plaintiff was prevented from even ascertaining the charges against him, thereby rendering defense preparations impossible. Tate, 391 So.2d at 1241.
We find the case at bar to be more similar to Cunningham v. Franklin Parish School Board, 457 So.2d 184 (La.App. 2d Cir.), writ denied, 461 So.2d 319 (La. 1984), where the statement of charges contained all the information required by LSA-R.S. 17:443(A) except for a statement as to whether any charges had been previously brought against Ms. Cunningham. The Court explained that the requirement that the statement of charges contain certain information is designed to insure that the teacher is afforded due process in the proceeding against him. Id. at 186. The information enables the teacher to prepare a defense. If the school board does not intend to present evidence of previously made charges, then the failure to include an indication as to whether previous charges have been filed does not prejudice the teacher. The Court concluded: "if the teacher is otherwise afforded due process, the mere failure of the statement of charges to include an indication of whether previous charges have been filed does not render the school board's decision to terminate a teacher invalid in the absence of prejudice to the teacher." Id. at 187.
We detect no due process violation to the rights of Ms. Meyers. The record shows that she was advised in writing more than twenty (20) days before the hearing of the specific charges against her. Plaintiff did not request a continuance or petition the board for more information concerning the charges or witnesses. The record shows that plaintiff was well prepared for the hearing. Counsel of her choice capably represented plaintiff's interests at the closed hearing she requested. Plaintiff cross-examined the witnesses against her and presented witnesses and evidence on her own behalf. Plaintiff logically, and correctly, anticipated that the witnesses to the incidents on March 16, and April 2, would be called as witnesses at the hearing. These witnesses alone attempted to establish plaintiff's guilt as to the incidents. We note that other witnesses were called by defendant without objection from plaintiff. This testimony was inconsequential and repetative. Plaintiff was not prejudiced; reasonable and substantial compliance with the principle of due process was afforded to plaintiff. See Johns v. Jefferson Davis Parish School Board, 154 So.2d 581, 584 (La.App. 3d Cir.1963). We find no adverse effect to plaintiff nor merit in her first assignment of error.

II.
Plaintiff asserts that the trial court erred in not permitting plaintiff to present evidence at the trial on the merits.
The Teachers' Tenure Act provides for a full hearing in LSA-R.S. 17:443(B):
"B. If a permanent teacher is found guilty by a school board, after due and legal hearing as provided herein, on charges of willful neglect of duty, or of incompetency, or dishonesty, or of being a member of or contributing to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the state of Louisiana, and ordered removed from office, or disciplined by the board, the superintendent with approval of the board shall furnish to the teacher a written statement of recommendation of removal or discipline, which shall include but not be limited to the exact reason(s), offense(s) or instance(s) upon which the recommendation is based. Such teacher may, not more than one year from the date of the said finding, petition a court of competent jurisdiction for a full hearing to review the action of the school board, and the court shall have jurisdiction to affirm or reverse the action of the school board in the matter. If the finding of the school board is reversed by the court and the teacher is ordered reinstated and restored to duty, the teacher shall be entitled to full pay for any loss of time or salary he or she may have sustained by *696 reason of the action of the said school board."
Despite this provision for a full hearing, it is well established that plaintiff is not entitled to a trial de novo, but only a "full hearing to review the action of the school board." LSA-R.S. 17:443(B); Howell v. Winn Parish School Board, 332 So.2d 822 (La.1976). It is also well established that a discharged employee of a school board is entitled to present additional evidence to the district court. Id. at 824, Lewing v. De Soto Parish School Board, 238 La. 43, 113 So.2d 462 (La.1959).
Plaintiff attempted to recall witnesses who had previously testified at the school board hearing. After a contradictory hearing, the trial court ruled:
"[A]ny witnesses who were heard at the school board hearing and whose testimony has been transcribed will not be allowed to testify again. However, if there are witnesses who can shed new light on this matter it will be proper for them to be allowed to testify. Court will allow transcript and will take up any new evidence on the issue. Mover is to supply a list of proposed witnesses and the substance of their proposed testimony within ten (10) days prior to the trial date of this case which is September 9, 1985, to counsel for the School Board. Counsel for the School Board is to provide a list of their proposed witnesses together with the substance of their proposed testimony to counsel for the plaintiff five (5) days prior to the court date. If the plaintiff does not call any new witnesses, the school board will not be allowed to call any new witnesses."
Plaintiff did not submit a list of proposed witnesses. Plaintiff did not apply for a writ of review of this interlocutory judgment; as a matter of fact, the minutes show that by agreement of counsel, the case was submitted on the record. Plaintiff has no cause to complain. We do note that the trial court's ruling reflects no error of law or logic. We, like our brothers in the First Circuit in Lewis v. East Feliciana Parish School Board, 372 So.2d 649, 652 (La.App. 1st Cir.1979), do not believe that plaintiff's right to offer additional evidence is unrestricted. Plaintiff is not permitted to duplicate the testimony which has already been heard by the school board. The duty of determining credibility was properly left to the school board.

III.
Plaintiff asserts, in the alternative, that the trial court erred in determining that the charges brought against plaintiff were supported by substantial evidence and thus constituted legal grounds for her termination.
The standard of judicial review of a school board's action is whether there is a rational basis for the board's determination supported by substantial evidence insofar as factually required. The reviewing court must neither substitute its judgment for the judgment of the school board nor interfere with the board's bona fide exercise of discretion. Howell, 332 So.2d at 825.
Two charges of willful neglect of duty were brought against plaintiff. The school board need find only one incident of such conduct to terminate the guilty employee. We find not only substantial but overwhelming evidence of plaintiff's guilt with regard to the April 2nd charge. (See "FACTS," supra.) The school board did not accept plaintiff's explanation and did not commit manifest error in finding plaintiff guilty. We express doubt as to the sufficiency of evidence as to the March 16th charge, but discussion of this incident is pretermitted by our determination of the correctness as to the April 2nd charge.

IV.
Plaintiff complains that the trial court erred in finding that plaintiff was not entitled to proceed in forma pauperis as provided for in La.C.C.P. arts. 5181-5188. The statutory test is provided by Article 5181: "[A]n individual who is unable to pay the costs of court because of his poverty and lack of means may prosecute or defend a judicial proceeding in any trial or appellate *697 court without paying the costs in advance or as they accrue or furnishing security therefor." The trial court denied plaintiff the right to proceed in forma pauperis. No writs were taken following this ruling. Evidentally plaintiff has paid court costs as they have accrued.
Extensive evidence of plaintiff's financial status was entered into the record and has been reviewed by this court. The trial court found plaintiff able to prepay the court costs. In the absence of clear abuse, we, as an appellate court, must not disturb the trial court's discretion in granting or denying the privilege to litigate in forma pauperis based upon that court's factual determination of the litigant's ability or inability to pay the court costs. Benjamin v. National Super Markets, Inc., 351 So.2d 138 (La.1977). We find no clear error or abuse of discretion. We note that Code of Civil Procedure Articles 5181-5188 do not bar assessment of costs. None of the Above v. Hardy, 377 So.2d 385 (La.App. 1st Cir.1979).
For the above and foregoing reasons, the judgment of the trial court is affirmed. Appellant, Yvonne Meyers, is taxed with costs of this appeal.
AFFIRMED.
KING, J., concurs and assigns reasons.
KING, Judge, concurring.
I concur with the result reached by the majority.
As the majority notes, the plaintiff-appellant is correct in asserting that the defendant-appellee did not comply with the provisions of LSA-R.S. 17:443 in specifying the "names of witnesses called or to be called to testify against the teacher at said hearing, and whether or not any such charges previously have been brought against the teacher." I do not agree with the majority that if a teacher is otherwise afforded due process that the failure of the statement of charges to include the statutorily required information does not render a school board's decision to terminate a teacher invalid in the absence of prejudice to the teacher. I believe that a failure to strictly comply with the statute is a failure of due process.
I concur in the result reached by the majority since an examination of the record at the hearing shows that the plaintiff-appellant, who was represented by counsel, waived notice of any defects in the statement of charges by not timely objecting to such defects prior to or during the hearing before the defendant-appellee. The record clearly shows that in the present case the plaintiff-appellant elected to proceed and did proceed with her defense, thereby waiving any irregularities preceding the hearing.
It has been recognized in Louisiana jurisprudence that strict compliance with LSA-R.S. 17:443 may be waived, where a statement of charges was defective by not strictly complying with LSA-R.S. 17:443, as a general appearance at a hearing without objection waives all irregularities preceding the hearing. See Fleming v. Concordia Parish School Board, 275 So.2d 795 (La. App. 3 Cir.1973); Williams, et al. v. East Baton Rouge Parish School Board, 36 So.2d 832 (La.App. 1 Cir.1948).
For this reason I concur in the result reached by the majority.
NOTES
[1] "Q. [Mr. Boone] What, if anything, did you overhear Mr. Ruffin tell those students?

A. [Mr. Stewart] Well, the kids came up there, two or three, and asked them where was [sic] they supposed to go that they had been sent up from the gym, and he said get your books together and go to Mrs. Meyers' room, and then a few minutes later they came back up and said that Mrs. Meyers was not going to be in there and she locked the door.
Q. They said that she had locked her door and they indicated that she did this in their presence?
A. Yes.
Q. Did Mr. Ruffin then leave you?
A. Yes.
Q. Did he come back and make any report to you and Mr. Malmay with reference to what had occurred?
A. No, he didn't, he came back and sat down at the table and we kind wondered there who was in charge."