BROWN, Chief Judge.
hOn June 12, 2012, plaintiff, Anthony Guirlando, filed suit in the Fifth Judicial District Court, seeking, inter alia, review of an adverse decision in a tenure hearing held by the Richland Parish School Board. Guirlando’s pleading was captioned “Petition for Appeal and Damages” and named as defendants the Richland Parish School Board, Regina Meekus, Harold Gallman, and the board superintendent, Dr. Cathy Stockton. Under the Tenure Law, La. R.S. 17:441 et seq., the trial court serves as the first court of appeal/review. Defendants filed a motion for summary judgment, which the trial court granted. Plaintiff has appealed the trial court’s ruling.

Facts/Procedural History

Plaintiff presently serves as the principal of Rayville Junior High School in Ray-ville, Louisiana. On April 11, 2011, a student, LaQuise Reynolds, had been sent to the principal’s office because of his refusal to do school work. LaQuise, a slightly built 12-year-old, had a history of disruptive and destructive behavior. According to Guirlando, while in the office, LaQuise threatened to “break some stuff,” and Guirlando had to restrain him. After this incident, LaQuise called his mother, wanting to come home. His mother, Helen Reynolds, does not drive and had no one who could pick LaQuise up at that time. Thus, Guirlando drove LaQuise home to his mother. LaQuise reported to Mrs. Reynolds that Guirlando had choked him. Guirlando apologized to LaQuise’s mother and said he had to restrain LaQuise. Mrs. Reynolds claimed that Guirlando said he had to restrain LaQuise and then added *139 that he said he had choked LaQuise. Mrs. 12Reynolds promptly called the superintendent, Dr. Cathy Stockton, who initiated an investigation into the incident.
Dr. Stockton had Harold Gallman interview the parties and take LaQuise to a physician. Dr. David Thompson, who was the Richland Parish Coroner and La-Quise’s family doctor, examined LaQuise that day and found no evidence of choking or any other injuries. Three days later, Mrs. Reynolds took LaQuise back to Dr. Thompson at which time he was diagnosed with sinusitis/bronchitis.
On May 11, 2011, Dr. Stockton presented formal charges against Guirlando to the Richland Parish School Board. The school board approved the charges (five in all, only one arising out of or related to the LaQuise Reynolds incident), and Guirlando was informed of the school board’s decision to hold a tenure hearing at which the charges would be considered.
The tenure hearing was held June 23-25, 2011. A number of witnesses testified, and documentary evidence was introduced. The school board found Guirlando guilty of two of the five charges: charge # 5 by a vote of six to three, the board found Guir-lando guilty of choking LaQuise; and, charge # 3 by a vote of seven to two, the board found the principal guilty of inefficiency in his refusal to submit important documents to the central office despite several requests to do so. Although the superintendent wanted Guirlando’s termination, in a 9-0 vote, the school board decided to impose a 30-day suspension without pay and a one-year probationary period.
On June 13, 2012, Guirlando filed his petition in the district court. In its written reasons, the district court found that the hearing was held in accordance with applicable law, La. R.S. 17:441 et seq., and that there was | sa rational basis supported by substantial evidence for the board’s determination that Guirlando was guilty of the conduct alleged in charges # 3 and # 5. It is from the district court’s judgment that Guirlando has appealed.

Discussion

Plaintiff, Anthony Guirlando, who is presently serving as the principal of Ray-ville Junior High School, is also a tenured classroom teacher. La. R.S. 17:444 B(l), which is applicable to principals, provides:
Whenever a teacher who has acquired tenure, as set forth in R.S. 17:442, in a local public school system or the special school district is promoted by the superintendent by moving such teacher from a position of lower salary to one of higher salary, such teacher shall not be eligible to earn tenure in the position to which he is promoted, but shall retain any tenure acquired as a teacher, pursuant to R.S. 17:442.
Further, La. R.S. 17:444 B(4)(c)(iii) provides:
The employee shall be retained during the term of a contract unless the employee is found incompetent or inefficient or is found to have failed to fulfill the terms and performance objectives of his contract. However, before an employee can be removed during the contract period, he shall have the right to written charges and a fair hearing before the board after reasonable written notice. (Emphasis added).
La. R.S. 17:443 B(l), which is applicable to teachers, provides in part:
A teacher with tenure shall not be removed from office except upon written and signed charges of poor performance, willful neglect of duty, incompetency, dishonesty, immorality ... and then only if furnished with a copy of such written charges and given the opportunity to respond.
*140 This court may not reverse the district court’s decision unless it finds that the school board’s proceedings failed to comply with statutory formalities and/or the board’s findings were not supported by substantial evidence. Wise v. Bossier Parish School Board, 02-1525 (La.06/27/03), 851 So.2d 1090.
|4Guirlando has not complained of any procedural irregularities, nor did the trial court find any. Therefore, the only issue before this court is whether the trial court was manifestly in error/clearly wrong in finding that there was a rational basis supported by substantial evidence for the school board’s decision.
Charge # 3 alleged that:
The Richland Parish Pupil Progression Plan requires regular meetings of each school’s School Building Level Committee (“SBLC”) and the preparation of documentation such as minutes of such meetings. In addition, the superintendent directed each principal to supply the central office with his/her school’s SBLC minutes on a monthly basis. Mr. Guirlando has also received specific directives that he turn in his school’s SBLC minutes. Despite the above-described plan and directives, Mr. Guirlan-do has failed to supply the central office with any SBLC minutes for the'2010-2011 school year. Such conduct on the part of Mr. Guirlando constitutes breach of contract and inefficiency for purposes of Louisiana Revised Statutes 17:444 and/or ineompetency and willful neglect of duty for purposes of Louisiana Revised Statutes 17:443.
The School Board found that Guirlando was guilty of inefficiency by repeatedly failing to provide the central office with Rayville Junior High School’s SBLC minutes for the 2010-2011 school year as required by the Pupil Progression Handbook (which is contained in the Administrators’ Handbook). According to the school board’s witnesses, Guirlando was asked numerous times to turn in the SBLC minutes. Joyce Smith, the supervisor of Pupil Appraisal Services, even offered to help him with the minutes and with the SBLC, but Guirlando would not accept any assistance.
Guirlando does not deny that he was responsible for filing the minutes and that he did not do so. Guirlando claims, however, that this charge alone is not deserving of punishment and would never have been pursued had the LaQuise Reynolds matter not arisen.
| .¡Guirlando discusses the testimony that relates to this charge, and notes several points. First, the letter from the school board placing him on leave mentioned only the LaQuise Reynolds incident and did not bring up any other charges or investigation. Second, while he acknowledges his ultimate responsibility for the SBLC minutes and that Rayville Junior High School did not send in the minutes as it should have, he notes that no specific requests for the minutes “in general” were ever made. Guirlando asserts that he was not suspended or reprimanded because of these SBLC minutes; this charge and the other four were added to the LaQuise Reynolds charge because “someone was out to get Anthony Guirlando.”
The school board found that charge # 3 did not involve incompetency, willful neglect of duty or breach of contract, but found Guirlando guilty of “inefficiency.” According to Guirlando, the inefficiency regarding SBLC minutes is widespread, not just limited to Rayville Junior High School.
Joyce Smith, Supervisor of Pupil Appraisal Services, testified with regard to this issue. She testified that in 2009, she became responsible for keeping the SBLC *141 minutes. She stated that principals were directed to turn in the SBLC minutes. She recalls the principals being told in two separate meetings during the 2010-2011 school year. Additionally, principals were told to turn the SBLC committee minutes in at the administrative workshop held in August 2010.
After not receiving the Rayville Junior High School SBLC minutes, she talked with Guirlando and offered to help him with those minutes. She offered four to five times during the year to help him and told him that she had to have him turn in the SBLC meeting minutes.
|fiMs. Smith testified that as of May 8, 2011, she never received one single SBLC minute or documentation from Rayville Junior High School. She stated that she did receive something from Rayville Junior High School on May 26, 2011, but only two documents were received for the entire school year. Ms. Smith stated that Guir-lando was aware of the need to turn in the minutes to her and that he was aware that she offered him assistance to do so. She stated that she did talk to Guirlando to get his reports in for December and January, but he did not do so.
Dr. Cathy Stockton stated that documentation for the SBLC minutes took on added significance in 2009 as the state monitored the reporting requirements. Each principal was to have his or her school’s SBLC minutes in Joyce Smith’s office. She documented several meetings at which Guirlando was present in which she mentioned that the SBLC minutes were to be provided to Joyce Smith.
The record shows that SBLC deals with failing students and how to help them achieve. The record clearly supports the school board’s determination on this charge, as well as the trial court’s ruling upholding the board’s decision.
Charge # 5 alleged that:
On or about April 11, 2011, LaQuise Reynolds was in the principal’s office of Rayville Junior High School. While La-Quise was in or near the office, Mr. Guirlando grabbed LaQuise at or about his neck, and by LaQuise’s description, choked him. Such conduct on the part of Mr. Guirlando violates board policy and state law and constitutes willful neglect of duty for purposes of Louisiana Revised Statutes 17:443 as well as breach of board contract for purposes of Louisiana Revised Statutes 17:444.
1 yGuirlando recognized that there is no question that an incident occurred between himself and LaQuise Reynolds. What is contested, however, is exactly what occurred. The only evidence that Guirlando choked LaQuise came from the student and his mother.
Guirlando was alone in his office with LaQuise Reynolds. Whether the door was open or closed is not clear. Guirlando placed himself in the position of having to defend his actions without a neutral third party witness present who could have testified to the events that occurred. According to Harold Gallman, there is no school policy that a third person be present. Further, there was a camera in the office; however, the camera was not working.
LaQuise stated to Gallman that he was mad and was wanting to throw something. Guirlando stated that he grabbed LaQuise in a bear hug to prevent damage. La-Quise stated that Guirlando grabbed his throat and choked him. LaQuise has a history at the school of being destructive and lying about incidents that happened at school. His mother even admitted that LaQuise had lied about other teachers at the school. Dr. Thompson examined La-Quise twice and found no evidence of chok *142 ing or injuries. We note that LaQuise’s mother has filed a civil lawsuit.
The record contains two very different accounts of the incident. In Wise, 851 So.2d at 1095, the supreme court stated:
Even though in the present case the School Board filed numerous charges of willful neglect of duty against Wise, there is no requirement in the applicable statute or the jurisprudence that mandates all charges must be proven before termination may be imposed. To the contrary, it is sufficient to support termination if any one of the charges of willful neglect of duty against the tenured teacher is sufficiently supported by the record. Meyers v. Sabine |8Parish Sch. Bd., 499 So.2d 690, 696 (La.App. 3d Cir.1986), writ denied, 501 So.2d 236 (La.1987); see also Simon v. Jefferson Davis Parish Sch. Bd., 289 So.2d 511, 517 (La.App. 4th Cir.), writ denied, 293 So.2d 178 (La.1974); Johns v. Jefferson Davis Parish Sch. Bd., 154 So.2d 581, 588 (La.App. 3d Cir.1963). Finding merit in the contention that Wise sent students unattended to the principal’s office in direct contravention of her principal’s repeated orders, we need not address the remaining allegations brought against her. FN6
Finding that Guirlando failed to present the minutes of SBLC meetings which was mandated and of significant importance to the evaluation of students as well as the school system, we find it unnecessary to reach the issue of whether the board’s (and the district court’s) conclusion regarding charge # 5 was supported by substantial evidence.

Conclusion

For the reasons stated above, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiff.

. In making this statement, we express no opinion as to the other charges against Wise. An expression in an opinion not necessary for the decision is merely "obiter dictum.” DuBell v. Union Central Life Ins. Co., 211 La. 167, 29 So.2d 709 (1947). Cognizant of our duty to decide matters before us on the narrowest grounds, we find it unnecessary to reach the validity of the other charges brought against Wise. See Cat’s Meow, Inc. v. City of New Orleans through Dep't of Finance, 98-0601 (La. 10/20/98), 720 So.2d 1186.