202 So.2d 34 (1967)
STATE ex rel. John A. DeBARGE, Plaintiff-Appellee,
v.
CAMERON PARISH SCHOOL BOARD et al., Defendants-Appellants.
No. 2172.
Court of Appeal of Louisiana, Third Circuit.
August 29, 1967.
Rehearing Denied September 13, 1967.
*35 Frank T. Salter, Jr., Lake Charles, and J. B. Jones, Jr., by J. B. Jones, Jr., Asst. Dist. Atty., Cameron, for defendants-appellants.
Joe J. Tritico and R. Keith Findley, by Joe J. Tritico, Lake Charles, for plaintiff-appellee.
Before FRUGE, CULPEPPER and LEAR, JJ.
CULPEPPER, Judge.
This is a suit by John A. DeBarge against the Cameron Parish School Board et al. for reinstatement as principal of Hackberry High School, from which office plaintiff was discharged by defendant. From an adverse judgment in the lower court the defendant School Board has appealed.
*36 After careful consideration we adopt as our own the written reasons of the District Judge as follows:
"The relator, John A. DeBarge, has brought this suit against the Cameron Parish School Board, its members and the superintendent of schools for writs of mandamus and injunction to reinstate him as principal of Hackberry High School and to maintain him in such office. He contends that he was discharged as principal by the respondents in violation of the provisions of the Louisiana Teachers' Tenure Act, R.S. 17:441-444, and that his prior resignation was ineffective inasmuch as it was withdrawn by him before it was accepted by the school board.
"The respondents deny that the relator is entitled to the relief sought on the grounds that his resignation was valid, and also that he was properly dismissed prior to the expiration of his probationary term as principal under the provisions of R.S. 17:442. It is admitted that if Mr. DeBarge has tenure as a principal there was no compliance with the requirements of R.S. 17:443 for removal of a permanent teacher.
"The case is presently before the Court on a Motion for Summary Judgment filed by the relator.
"Thus the Court is called upon to decide simply whether or not there is any genuine issue as to any material fact concerning these questions:
"First, was Mr. DeBarge a `permanent teacher' with respect to his position as principal of the Hackberry High School, or was he still serving a probationary term at the time of his dismissal from this position?
"Second, was Mr. DeBarge's resignation of April 3, 1967, legally effective?
"The facts with respect to the relator's employment are undisputed. He was first employed by the Cameron Parish School Board as head football coach and a teacher of social studies and physical education at Hackberry High School during the period from September, 1963, to October, 1964. He continued to serve in such capacity and also as acting principal from October, 1964, through May, 1965. In September of 1965, relator was made principal of this high school, which position he occupied up to and including the date of filing of this suit on April 25, 1967.
"Mr. DeBarge holds a Louisiana teacher's certificate, and this was required during his entire employment as a teacher and principal.
"The precise question with which the Court is presented, then, is whether the relator acquired tenure as a principal at the end of three years from the date that he was first employed by the Cameron Parish School Board in September, 1963, or did he have to serve as principal for the full three years to be entitled to tenure as a permanent teacher in such office.
"In State ex rel. Bass v. Vernon Parish School Board [La.App.], 194 So. 74, it was held that the removal of a principal from such office who had served as such for more than three years, and his assignment as a school teacher without complying with the provisions of the Teachers' Tenure Act for a hearing, was a violation of the statute. Said the Court: `From these considerations, we are of the opinion that the word "office" as used in the statute refers not merely to a teaching position in the parish but to the particular type of teaching position or status which the teacher has attained, though not to the identical position and that the disturbance of the teacher from that attained position or status in (sic) [is] § removal from office under the statute.'
"By way of dictum in State ex rel. Rathe v. Jefferson Parish School Board, 206 *37 La. 317, 19 So.2d 153, our Supreme Court said in its opinion on rehearing: `While Act 58 of 1936, the Teachers' Tenure Statute, provides for a probationary period of three years before a teacher acquires a permanent status, there is no such provision in the State with reference to the employment of a principal of a school. It appears, however, that the State Board of Education's regulations require a teacher to have a minimum of five years' experience before being eligible to become a principal.'
"This precise question was presented to the court through the facts involved in State ex rel. Charbonnet v. Jefferson Parish School Board [La.App.], 188 So.2d 143. There the relator was held to be entitled to all the benefits of R.S. 17:443 as a permanent teacher in spite of the fact that he had served as a principal of a high school for only about a year and a half when he was removed without a hearing. He had served as principal of an elementary school at a lesser salary for approximately seven years before this, and he was first employed as a teacher in the parish in 1949. The question of whether the relator there had served three years as principal in order to be entitled to the protection of R.S. 17:443 was discussed at length by the trial judge in his reasons for judgment. However, in affirming the lower court's decision the Fourth Circuit Court of Appeal simply said: `From the School Teacher's Tenure statute, cited supra, Relator's probationary period expired three years after his original appointment in 1949 and, thereafter, he had permanent tenure status subject, under LSA-R.S. 17:443, to removal only for cause and in the manner set forth in the statute. The School Board had no right to remove Relator from his position as Principal without first giving him formal written charges and a hearing, as prescribed by the statute.'
"Application for a writ was refused by the Supreme Court. 249 La. 727, 190 So.1d [2d] 238. However, three of the justices were of the opinion that it should have been granted.
"In view of Charbonnet and the rule long established in our jurisprudence to the effect that after satisfactorily completing a probationary term of three years from date of first appointment in a parish, a teacher cannot be removed from the position or status which he or she has attained, except for cause and after a hearing as provided in the statute, this Court is of the opinion that Mr. DeBarge had permanent tenure status as principal at the time he was notified that he would not be re-employed in such capacity and that he could not be removed from such position without compliance with R. S. 17:443.
"The next question that must be determined is whether or not the relator effectively resigned his position as principal of Hackberry High School.
"According to 78 C.J.S., Schools and School Districts, Section 206, `A teacher's contract of employment may be terminated by his resignation, but the resignation, in order to be effective, must be offered by the teacher with intent to terminate his employment, to the board or officer having power to accept, acting as a board.' * * *
"`The resignation may be withdrawn at any time before it is accepted, but after the resignation has been accepted it is effective as against a subsequent attempt to withdraw or offer to serve, even though the teacher attempts to withdraw before the effective date of his resignation.'" Pages 1101 and 1102.
"The undisputed facts with respect to the resignation are these.
"According to the Minutes of the Meeting of the Cameron Parish School Board on April 3, 1967, the Superintendent of Schools, W. J. Montie, was authorized `to notify the following teachers that they *38 would not be re-employed for the 1967-68 session: John A. DeBarge * * *'. When Mr. DeBarge received such information from Mr. Montie in a telephone conversation on April 3, 1967, he said he would resign, and that same day he wrote a letter to this effect addressed to the school board. It was received by Mr. Montie on April 5th, who also wrote a letter of acceptance to Mr. DeBarge on the same date, that was received by the latter on April 6th. However, on April 5th, relator decided to withdraw his resignation, and letters to this effect were written to the school board on April 5th and another on April 6th. These were delivered to Mr. Montie and the school board on those dates, respectively. The school board, acting as a body, formally accepted relator's resignation at a special meeting held on April 13, 1967, and also took action relative to his dismissal under the provisions of R.S. 17:442. The latter procedure was again followed by the board at its meeting of June 5, 1967.
"The respondents contend that there is an established custom in Cameron Parish of allowing unsatisfactory teachers to resign if they wish to do so, prior to instituting formal action for their discharge, and although the minutes contain no mention thereof, the purpose of the motion authorizing Mr. Montie to notify Mr. DeBarge that he would not be re-employed as principal was to follow such custom and also to authorize him to accept Mr. DeBarge's resignation in behalf of the school board. In addition, they contend that Mr. Montie wrote and mailed the letter of April 5, 1967, accepting plaintiff's resignation, before receiving relator's letter of withdrawal of that date.
"The relator contends, among other things, that his resignation was ineffective because it was withdrawn before it was properly accepted. He argues that since it was addressed to the Cameron Parish School Board, the board was required to act as a body in accepting same, and it did not and could not delegate to the superintendent authority to act in its behalf before the board received notification that the attempted resignation had been withdrawn.
"If there is a genuine dispute as to any material fact in regard to whether Mr. Montie was legally authorized to accept Mr. DeBarge's resignation in behalf of the school board, the motion for summary judgment will have to be denied. However, if, under the undisputed facts set forth above, the resignation was effectively withdrawn before it was accepted by the school board, then relator is entitled to the relief sought herein.
"According to Johnson v. Sabine Parish School Board [19 La.App. 243] 140 So. 87:
"`A public board is constituted to act in the interest of the public welfare as a deliberative body with each of its members assisting the board to arrive at a conclusion which reflects the result of their united wisdom and experience. The board alone, therefore, must finally determine every subject committed to its discretion and judgment.
"`The general rule, succinctly stated, is that legislative and discretionary powers devolved by law on a public board or governing body politic cannot be delegated, or referred to the discretion and judgment of its subordinates or any other authority. A contrary rule prevails, however, as to ministerial functions of such board or body.'"
"From this and the fact that the power to employ and discharge teachers has been vested by the legislature solely in the school boards, it seems doubtful that the power to accept resignations of teachers can be delegated to a superintendent of schools. But even so, since the power is more than a mere act of administration *39 it would have to be expressly and specially conferred. R.C.C. Article 2997. In this Court's opinion the power and authority to accept resignations cannot be implied or inferred from the motion adopted at the meeting of the school board on April 3, 1967, wherein Mr. Montie was directed simply to notify Mr. DeBarge and other teachers that they would not be re-employed for the 1967-68 session, and this would be the case irrespective of any custom that prevailed in the parish.
"Regardless of what prompted his action, in this instance Mr. DeBarge's resignation was addressed not to the superintendent of schools but to the Cameron Parish School Board. Although no Louisiana cases on the subject have been cited or discovered by the Court in its own research, under the general rules of law quoted above from Corpus Juris Secundum, to become effective the resignation had to be accepted in accordance with the terms of the offer by the board, acting as such. Since this was not done until the April 13th meeting, after the resignation had been withdrawn and the board had due notice thereof, the Court concludes that the relator's attempted resignation was of no effect.
"A contention has been made that the action taken by the board on April 13th effectively ratified Mr. Montie's acceptance of Mr. DeBarge's resignation. While this may have been the case if the resignation had not been effectively withdrawn prior thereto, it is difficult for the Court to see how a ratification of an ineffective obligation or contract can breathe life into something which does not exist.
"Since there is no genuine issue of any material fact in regard to the questions presented for determination and relator is entitled to judgment as a matter of law, the motion for summary judgment will be sustained.
"For these reasons, there will be judgment rendered herein in favor of relator and against the respondents, maintaining the writ of mandamus issued herein and directing respondents to reinstate relator as principal of Hackberry High School in Cameron Parish, Louisiana, and further issuing a writ of preliminary injunction enjoining respondents from disturbing relator in possession of his office, or interfering with the performance of his duties, reserving, however, to the respondents the right to proceed under R.S. 17:443, or take any other action not inconsistent with the Teachers' Tenure Statutes."
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendants-appellants.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
FRUGE, Judge, votes for rehearing for these written reasons:
After reconsideration, I am of the firm opinion that the judgment should be reversed. I do not feel that the teachers' tenure act was passed with the intent to abolish the great and necessary distinction between school board employees serving as classroom instructors and those serving in the general capacity as principals; nor do I believe that the legislature, by mere passage of the teachers' tenure act, intended to deprive the school board of a probationary principal. Such a result imposes undue hardship upon school boards in their efforts to select the most capable persons as school principals. The holding of the Charbonnet case (relied upon by the majority) is not in conflict with my position, since there the relator had served in a capacity as principal some eight years before his removal; thus, he had long since become tenured in that office.