469 So.2d 1110 (1985)
Bobby BROWN, Plaintiff-Appellant,
v.
RED RIVER PARISH SCHOOL BOARD, Defendant-Appellee.
Nos. 16998-CA, 16999-CA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1985.
*1111 Murphy J. White, Mansfield, for plaintiff-appellant.
Walter E. Dorroh, Jr., Asst. Dist. Atty., Coushatta, for defendant-appellee.
Before HALL, FRED W. JONES, Jr. and NORRIS, JJ.
NORRIS, Judge.
Appellant Bobby Brown appeals a judgment of the trial court sustaining exceptions of prematurity and dismissing his two suits against the Red River Parish School Board. For the reasons expressed, we reverse and remand.
Brown is a tenured elementary school teacher and employee of the Red River Parish School Board ("Board") at Springhill Junior High in Coushatta. At the Board's regular meeting on March 20, 1984, two parents complained to the entire Board about Brown's methods of disciplining students. Brown had received no formal notice that he would be the subject of discussion at the meeting, although his principal had informally mentioned it to him earlier the same day and had discouraged him from attending. Without affording Brown the opportunity to present his side of the story, the Board found Brown guilty of inflicting "cruel and excessive" punishment. As a result, the Board voted to reprimand him and place him on probation. The Superintendent composed and mailed him a letter, which read in part:

*1112 Therefore, this letter is to advise you that you are now on a probationary period of 20 working days, March 20April 20, 1984. During that probationary period, further incidents of excessive punishment meted out by you upon your students will be dealt with harshly by this Board. Further, you are advised that in the event a complaint is brought to this Board by a concerned parent about you and your use of excessive punishment, even if such complaint is brought after the probationary period, this Board will have to consider stern disciplinary action against you.
A copy of this letter will be placed in your personnel file for future reference. We trust that this warning will be heeded * * *.
Acting on the Board's instructions, the superintendent placed a copy of the letter in Brown's personnel file for future reference. However, the Board never resorted to any further action. Brown was neither fired, suspended, nor demoted. Despite the Board's alleged attempt to proceed with discretion, news of Brown's reprimand and probation leaked and appeared in stories in the Coushatta Citizen and Shreveport Times.
Brown did not appeal the probation and reprimand according to the Board's grievance procedure; in fact, he appears never even to have taken up the matter with any of the persons involved. Instead, he filed two lawsuits against the Board, almost three months later. The suit appealed in No. 16,998-CA claimed damages for defamation; No. 16,999-CA contested the reprimand and probation, and demanded attorney fees. The Board filed dilatory exceptions of prematurity, arguing that the grievance procedure was a condition precedent to judicial action on grievances. After a brief hearing, the trial court sustained these exceptions and dismissed the suits without prejudice. From these judgments, Brown appeals.
Shortly after Brown lodged these appeals, the Board moved to dismiss them, on the ground that judgment on a dilatory exception is interlocutory and therefore not appealable absent a showing of irreparable harm. LSA-C.C.P. art. 2083. This court denied the motion to dismiss. Although a judgment sustaining a dilatory exception is itself only interlocutory, yet the subsequent decree dismissing the suit is a final, appealable judgment. Stone v. Stone, 258 So.2d 404 (La.App. 4th Cir.1972); Prejean v. Ortego, 262 So.2d 402 (La.App. 3d Cir. 1972); Butler v. Flint-Goodridge Hosp., etc., 346 So.2d 1131 (La.App. 4th Cir.1977). This issue is no longer before the court.

THE GRIEVANCE POLICY
In 1983, the legislature enacted LSA-R.S. 17:100.4, authorizing school boards to establish grievance procedures for teachers. R.S. 17:100.4 provides in part:
A. Each city and parish school board shall adopt rules, regulations, and policies necessary to establish a grievance procedure that shall guarantee a fair hearing on grievances by any teacher or group of teachers employed by such school board. However, prior to the adoption of the rules, regulations, and policies, each school board shall consult with the various professional organizations that represent the teachers in that school system regarding the grievance procedure.
B. In establishing a grievance procedure, each city and parish school board shall allow for representation in any school board action on the grievance by the teacher or teachers voicing the grievance or by a representative or representatives of their choosing.
Pursuant to this authority, the Red River Parish School Board adopted a "Complaints and Grievances Policy" ("Policy") on November 1, 1983. For purposes of discussion, we will summarize the Policy's salient features. A grievance is defined as a claim by an individual or student that he or she has suffered harm or injury by "the interpretation, application or violation of a contract, a school board policy, a law or constitutionally guaranteed rights." A grievance does not include a matter for which *1113 the resolution is prescribed by law, such as employee termination or student discipline, or where the school board is without authority to act.
Grievances are to be processed according to a five-tiered procedure.
Level One consists of an oral discussion with the aggrieved person's immediate supervisor or principal.
Level Two requires a written grievance to be submitted to the same supervisor or principal.
Level Three is submission of the same written grievance to the member of the central office staff with jurisdiction over the grievance.
Level Four is submission of the same written grievance to the superintendent.
Level Five requires a written request for the superintendent to place the grievance before the entire Board.
The Policy establishes time limits for response on each level and contemplates that the employee should begin at Level One and proceed upward, as each request is either unanswered within the prescribed time, or denied by the appropriate respondent.
Without labeling it an administrative remedy, the trial court found that the Policy prescribed a procedure which must be followed before a complainant may resort to the courts.

SPECIFICATIONS OF ERROR NOS. 1 & 2
In his first specification of error, Brown claims the Board's action is appealable to the district court because of the provisions of LSA-R.S. 17:443. Appellant contends not only that the Board acted illegally in not following the twenty-day notice requirement of § 443 A, but that its action is subject to review under § 443 B. R.S. 17:443 provides, with emphasis added to show the language on which Brown relies:
§ 443. Removal of teachers; procedure; right to appeal
A. A permanent teacher shall not be removed from office except upon written and signed charges of willful neglect of duty, or incompetency or dishonesty, or of being a member of or contributing to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the state of Louisiana, and then only if found guilty after a hearing by the school board of the parish or city, as the case may be, which hearing may be private or public, at the option of the teacher. At least twenty days in advance of the date of the hearing, the superintendent with approval of the school board shall furnish the teacher with a copy of the written charges. Such statement of charges shall include a complete and detailed list of the specific reasons for such charges and shall include but not be limited to the following: date and place of alleged offense or offenses, names of individuals involved in or witnessing such offense or offenses, names of witnesses called or to be called to testify against the teacher at said hearing, and whether or not any such charges previously have been brought against the teacher. The teacher shall have the right to appear before the board with witnesses in his behalf and with counsel of his selection, all of whom shall be heard by the board at said hearing. For the purpose of conducting hearings hereunder the board shall have the power to issue subpoenas to compel the attendance of all witnesses on behalf of the teacher. Nothing herein contained shall impair the right of appeal to a court of competent jurisdiction.

B. If a permanent teacher is found guilty by a school board, after due and legal hearing as provided herein, on charges of willful neglect of duty, or of incompetency, or dishonesty, or of being a member of or contributing to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the state of Louisiana, and ordered removed from office, or disciplined by the board, the superintendent with approval of the board shall *1114 furnish to the teacher a written statement of recommendation of removal or discipline, which shall include but not be limited to the exact reason(s), offense(s) or instance(s) upon which the recommendation is based. Such teacher may, not more than one year from the date of the said finding, petition a court of competent jurisdiction for a full hearing to review the action of the school board, and the court shall have jurisdiction to affirm or reverse the action of the school board in the matter. If the finding of the school board is reversed by the court and the teacher is ordered reinstated and restored to duty, the teacher shall be entitled to full pay for any loss of time or salary he or she may have sustained by reason of the action of the said school board.
Brown contends very simply that § 443 B provides judicial review for a teacher who has been "disciplined by the board." He strongly urges that the Board's actions of placing him on probation and reprimanding him amount to discipline and thus activate the remedy of review.
The Board responds to this specification of error with two arguments. The Board first claims that R.S. 17:443 does not apply because its function is limited to the removal of teachers. This argument is untenable. Although § 443 A may appear limited to removal, § 443 B specifically includes removal and discipline. In fact, this court as recently applied § 443 B to a disciplinary action. See In re Dowden, 446 So.2d 853 (La.App. 2d Cir.1984), writ denied 450 So.2d 954 (La.1984).
The Board then argues that it did not "discipline" Brown. It points to the exact language of its letter, "if such a complaint is brought ... this Board will have to consider stern disciplinary action against you," and argues that if it was only considering disciplinary action, then actual discipline had not yet occurred. Since no additional action was taken, the Board contends, the letter was nothing more than a "warning."
With this argument we must disagree. There can be no doubt that the Board's actions in placing Brown on probation and inserting a reprimand in his personnel file, amount to discipline. The Board's argument to the contrary strains the imagination. The probationary period imposed by the Board is determinative of this issue. LSA-R.S. 17:442 provides that each new teacher must serve three years probation before gaining tenure. LSA-R.S. 17:444 provides that upon promotion to a higher position, a tenured teacher must serve another three year probationary period, during which he retains his existing tenure. Probationary status is inferior because certain disabilities attach. R.S. 17:442. Any attempt to place appellant in the inferior, probationary position must be construed as an act of "discipline."
We admit there is little jurisprudential guidance on the question of discipline. In re Dowden, supra, involved a disciplinary suspension of two teachers who had allegedly misused accumulated sick leave to take an eight-day hunting trip. This court considered the suspension an act of discipline, entitling the teachers to judicial review under § 443 B. In Joseph v. St. Charles Par. School Bd., 736 F.2d 1036 (5th Cir.1984), the federal court provided judicial review for a teacher who had been both suspended and subjected to a tenure hearing. There was no ground for judicial relief other than § 443 B, because the Administrative Procedure Act did not apply. LSA-R.S. 49:951 et seq., esp. 49:951(2). All the other cases construing R.S. 17:443 deal with termination and removal. We nevertheless find that the Board's acts in the instant case amount to discipline.
Likewise, the record offers us little guidance. In addition to Mr. Brown's own testimony, appellant called the superintendent and another member of the Board. One of the objectives of his direct examination was to learn from these witnesses whether the Board considered its actions to be disciplinary. Counsel for appellant tried to ask what the Board's usual methods were. Every time he did so, however, the Board's counsel objected, claiming the question went beyond the scope of the *1115 hearing. This was incorrect because appellant was entitled to show that the Board's conduct was reviewable under § 443 B. Furthermore, evidence is always admissible on the trial of a dilatory exception. LSA-C.C.P. art. 930; Weldon v. Republic Bank, 414 So.2d 1361 (La.App. 2d Cir.1982). The Board's position at trial was that the Policy, and only the Policy, would govern this dispute. Counsel's objections are lengthier than the testimony in the record. The result is that the record is very spare. We can safely assume that the excluded answers would have been detrimental to the Board, as both the superintendent and the board member would have admitted that their acts amounted to discipline. In sum, we find that the Board disciplined Brown within the contemplation of the statute.
In his second specification of error, Brown claims it was error to require him to go through the grievance Policy. This is correct. Not only does § 443 B provide for direct judicial review, but the Policy itself is inapplicable to grievances "for which the resolution is prescribed by law." Appellant is not required to follow the policy, which also seems inadequate for situations of this type, when the full Board has already spoken.
For these reasons, the judgment in No. 16,999-CA is reversed. The case is remanded for further proceedings in accordance with this opinion.

SPECIFICATION OF ERROR NO. 3
In this specification, appellant claims the judgment was "inconsistent with the law, evidence and facts of the case." This contention is not addressed separately in the briefs but we will use it to dispose of the defamation issue raised in the appeal. Although the litigants barely mentioned defamation on appeal, we find enough evidence in the record to support a reversal of the trial court's judgment.
The first and threshold element of an action for defamation is proof of defamatory words. Carter v. Catfish Cabin, 316 So.2d 517 (La.App. 2d Cir.1975); Cangelosi v. Schwegmann Bros., etc., 390 So.2d 196 (La.1980). It frequently occurs that the alleged defamatory words are contained in a civil petition. In such a case, a separate action for defamation is premature until the words are proved false in the first suit. Weldon v. Republic Bank, 414 So.2d 1361 (La.App. 2d Cir.1982).
This reasoning is not applicable to the instant case. Brown's defamation suit claims the Board made a false statement about him at the Board meeting and in the letter to him. The issue in suit No. 16,999-CA is not the truth or falsity of the Board's words, but whether the Board complied with LSA-R.S. 17:443 in disciplining Brown. If it did not comply, its actions were illegal, null and void. Johnson v. Bd. of Elem. & Secondary Educ., 414 So.2d 352 (La.1982); LSA-R.S. 17:445. Thus, the truth value of the Board's statements is not an issue in suit No. 16,999-CA. There is no reason to suspend the progress of the defamation suit, No. 16,998-CA.
We also conclude that the Policy is not a prerequisite to a defamation suit against the Board. The Policy is tailored to settling disputes that arise from administrative and educational decisions. It does not protect the Board from the torts it commits. LSA-Const. Art. I § 22; LSA-C.C. art. 2315. The Policy's authorizing statute, R.S. 17:100.4, is not jurisdictional. Appellant cannot be required to comply with the Policy to assert his rights in suit No. 16,998-CA.
The judgment in No. 16,998-CA is reversed and remanded for further proceedings consistent with this opinion.

DECREE
For the reasons expressed, both judgments sustaining exceptions of prematurity are reversed. The judgments dismissing the suits are also reversed. Both suits are remanded to the district court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.