522 So.2d 1195 (1988)
Roland N. ROZAS, M.D.,
v.
DEPARTMENT OF HEALTH AND HUMAN RESOURCES, STATE OF LOUISIANA, et al.
No. CA-8331.
Court of Appeal of Louisiana, Fourth Circuit.
March 10, 1988.
Writ Denied May 6, 1988.
Steven J. Lane, Herman, Herman, Katz & Cotlar, New Orleans, for plaintiff-appellant Roland N. Rozas, M.D.
Rutledge C. Clement, Jr., Amelia J. Williams, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, for defendants-appellees Bd. of Sup'rs of Louisiana State University and Agricultural and Mechanical College, Dr. Fred Allison, Dr. John Bickers, Dr. Donna H. Ryan, Dr. Robert Weilbacher, Dr. Fred Derks, Dr. Richard Vial, and Dr. Carl Dicharry.
William J. Guste, Jr., Atty. Gen., Kendall L. Vick, Asst. Atty. Gen., Eavelyn T. Brooks, Asst. Atty. Gen., New Orleans, for defendants-appellees State of La., Dept. of Health and Human Resources, Charity Hosp. of New Orleans, and Dr. Joseph Crapanzano.
Before GULOTTA, KLEES and LOBRANO, JJ.
KLEES, Judge.
Plaintiff, Dr. Roland Rozas, appeals the summary judgment issued by the district court dismissing his defamation claim. We affirm.
Plaintiff was a resident under yearly contract to the Louisiana State University Medical Service at Charity Hospital in New Orleans from July 1, 1976 until June 30, 1978. In September of 1977, he was informed by his superiors that he would not be offered a position as a third-year resident for 1978 to 1979. He completed his residency at Baylor College of Medicine in Texas in 1979, and applied to the American Board of Internal Medicine to take his board certification examination. In August *1196 of 1980, plaintiff received a letter from the Board informing him that he was not eligible to take the examination because his clinical skills had been rated unsatisfactory by his residency program director(s). In an effort to discover whether this rating came from Baylor or L.S.U., Dr. Rozas checked his personnel file at Baylor in late 1980 and found that Baylor had given him a satisfactory rating. At this point, he knew that L.S.U. was the source of the unsatisfactory evaluation.
Plaintiff called L.S.U. from Houston in January of 1981 and spoke with Amelia Fernandez, a secretary in the records room. According to plaintiff, Ms. Fernandez told him that his personnel records were confidential and that he would not be allowed access to his file. The same month, plaintiff obtained an application to take a special oral evaluation of clinical skills offered by the Board as a substitute for an unsatisfactory evaluation during residency. Plaintiff underwent this special evaluation in June of 1983, but did not pass it. After failing the special evaluation, plaintiff went to L.S. U. in person on November 22, 1983 and was permitted to see his file. Shortly thereafter, plaintiff wrote a letter to his former superiors at L.S.U. and asked them to reconsider their evaluation of him. On January 23, 1984, the L.S.U. Department of Internal Medicine notified the American Board of Internal Medicine that it had reversed its position with regard to Dr. Rozas' clinical competency and recommended that the Board allow plaintiff to take the certification examination. As a result, the Board changed Dr. Rozas' status to "Board eligible" on January 31, 1984.
On November 20, 1984, Dr. Rozas filed this petition against L.S.U., Charity Hospital and several individual doctors alleging breach of contract, libel and slander, and wrongful termination of his employment at L.S.U. He later filed a supplemental petition claiming that defendants' actions constituted unlawful discrimination in violation of La.R.S. 23:1006 and of the federal Civil Rights Act, 42 U.S.C. §§ 1981 and 1983.
Defendants brought a motion for summary judgment, claiming that plaintiff's demands should be dismissed on various grounds. At the hearing on the motion, counsel for plaintiff withdrew the supplemental petition and stated that plaintiff was continuing to assert only his demands for breach of contract, wrongful termination, and defamation. After hearing the evidence, the district judge ruled that summary judgment was not appropriate on the breach of contract claim, which he viewed as essentially the same cause of action as wrongful termination, because there was a material issue of fact as to whether plaintiff had an oral contract with L.S.U. for three years of residency. The court did, however, issue summary judgment dismissing plaintiff's defamation claim on the ground that it had prescribed. Plaintiff now appeals this summary judgment. Having reviewed the facts and the law, we agree with the district court that the defamation claim was barred by prescription.
Defamation sounds in tort and therefore is subject to the one-year prescriptive period for delictual actions set forth in Louisiana Civil Code article 3492. See Dupre v. Marquis, 467 So.2d 65 (La. App. 3d Cir.1985), writ denied, 472 So.2d 38 (La.1985). According to article 3492, the prescription begins to run "from the day injury or damage is sustained." Plaintiff's defamation suit, filed in November of 1984, is based upon allegedly libelous material contained in his personnel file that prompted L.S.U. to decline to renew his contract in 1978 and to advise the American Board of Internal Medicine in 1980 that he was clinically incompetent.
To excuse his lateness in filing suit, plaintiff relies on the accepted doctrine of contra non valentem, which holds that prescription does not run against one who is ignorant of the existence of facts that would entitle him to bring suit. See Cartwright v. Chrysler Corp., 255 La. 597, 232 So.2d 285, 287 (La.1970). Specifically, plaintiff claims that he did not know that there was defamatory material in his L.S. U. file until November 22, 1983, when he first looked at the file. Further, he contends that the running of prescription was suspended until that date because L.S.U. *1197 actively prevented him from seeing his file prior to that time. In support of this contention, plaintiff cites Corsey v. State Department of Corrections, 375 So.2d 1319 (La.1979), in which our Supreme Court held that contra non valentem applies to suspend prescription when the plaintiff has been prevented from pursuing his claim due to the fault or wrongful conduct of the defendant.
We find no merit in plaintiff's argument. In his deposition, plaintiff admitted that before the end of 1980, he knew that L.S.U. had rated him clinically incompetent. This knowledge apparently led him to suspect that there were inaccuracies in his file, because he telephoned L.S.U. shortly thereafter and asked to see his records. Nevertheless, when his request was turned down by a secretary, plaintiff took no further steps to gain access to his fileeither by going to L.S.U. personally or by asking to speak with the doctor in chargeuntil November of 1983, when, according to the plaintiff, his file was provided to him only after he threatened the secretary with legal action. In contrast to this testimony, Dr. Allison of L.S.U. stated in his deposition that the school had a policy that the residents' personnel files were always available to them.
Whether or not L.S.U. actually attempted to conceal plaintiff's file from him is not relevant, however, because plaintiff did not make a sufficient, timely effort to see the file. We agree with the trial court that plaintiff had sufficient facts to make him aware that he potentially had a claim against L.S.U. in 1980 when he learned that L.S.U. had given him a poor clinical evaluation. In Corsey, supra, the Court emphasized that the principle of contra non valentem does not suspend the running of prescription if the plaintiff's ignorance is attributable to his own willfulness or neglect; that is, a plaintiff is deemed to know what he could by reasonable diligence have learned. 375 So.2d at 1322. Moreover, in Cartwright v. Chrysler Corp., supra, the Court stated that the plaintiff need not have actual knowledge of the conditions which might entitle him to bring suit, but only "constructive notice." 232 So.2d at 287. Thus, according to the Court:
Whatever is notice enough to excite attention and put the [plaintiff] on his guard and call for inquiry is tantamount to knowledge or notice of every thing to which inquiry may lead and such information or knowledge as ought to reasonably put the [plaintiff] on inquiry is sufficient to start the running of prescription.
Id. at 287 (footnote omitted). See also, Sturm v. Zelden and Zelden, 445 So.2d 32, 34 (La.App. 4th Cir.1984).
In this case, the district court correctly found that plaintiff was on notice enough to excite his attention and call for an inquiry at least by the end of 1980 when he was denied the right to take the board examination in Internal Medicine because of the L.S.U. recommendation. At this point, if plaintiff felt he had been damaged by L.S.U.'s action, he had an obligation to further investigate the facts in order to pursue his claim before the one-year prescriptive period elapsed. If plaintiff had taken any action in 1981 beyond making one telephone call to a secretary, he might have had sufficient information upon which to file this defamation claim before it prescribed. As it is, however, the undisputed facts show that plaintiff's failure to file suit timely was due to his own lack of diligence, and therefore the trial court correctly refused to apply contra non valentem to suspend prescription in this case.
Accordingly, for the reasons stated, we affirm the summary judgment issued by the district court dismissing plaintiff's defamation claim on the ground of prescription.
AFFIRMED.