928 So.2d 104 (2005)
Arthur A. CLARK
v.
Clayton M. WILCOX, Superintendent, Individually and in His Official Capacity and East Baton Rouge Parish School Board.
No. 2004 CW 2254R.
Court of Appeal of Louisiana, First Circuit.
December 22, 2005.
*107 Benn Hamilton, Baton Rouge, for Plaintiff-Respondent Arthur A. Clark.
Karen D. Murphy, Kenneth F. Sills, Hammonds & Sills, Baton Rouge, for Defendants-Relators Clayton M. Wilcox and the East Baton Rouge Parish School Board.
Before: PARRO, KUHN, and WELCH, JJ.
PARRO, J.
The defendants filed an application for a supervisory writ in connection with the trial court judgment overruling their peremptory exception raising the objection of prescription with respect to the causes of action stated in the original petition for reinstatement and damages by its former employee.

Factual and Procedural Background
On February 6, 2004, Arthur A. Clark (Clark), a coach and teacher formerly employed by the East Baton Rouge Parish School Board (School Board) at Scotlandville Middle School, filed suit against the School Board and its superintendent, Clayton W. Wilcox (collectively referred to as defendants), asserting claims arising from his allegations of wrongful termination and defamation. In his petition, Clark alleged that on January 8, 2003, as he was displaying a knife, that he had found on the school grounds or seized from a student, to a small group of students and cautioning them against bringing such contraband to school, a sixth grade student made disrespectful comments to Clark and ran away. Clark claimed that he pursued the student and ordered him to report to the principal's office.
According to Clark's petition, the student reported to the principal that Clark had pulled a knife on him. In his petition, Clark averred that the principal had reported the alleged knife-pulling incident to the East Baton Rouge Parish Sheriff's Office on January 8, 2003, and that the principal had ordered him to report to the human resources office. Annette Mire (Mire) of the human resources office proposed that Clark voluntarily resign to spare all of the parties some time and energy, which Clark declined to do. The next day, Clark learned during a telephone call to his home from a sheriff's deputy that he was wanted for questioning and that a warrant had been issued for his arrest.
Subsequently, Clark again met with Mire, who advised him that if he had resigned, Clark would have avoided adverse publicity and the possibility of being publicly arrested. During this meeting, Mire allegedly offered to grant Clark's family 65 percent of his family health insurance plan as further inducement for a voluntary resignation in the face of a threatened termination proceeding. That day, on January 9, 2003, Clark submitted a voluntary resignation from his tenured teaching position.
In his petition, Clark also alleged that certain School Board employees intentionally and maliciously misrepresented facts to the local authorities and the general public for the purpose of defaming him. Specifically, Clark asserted that on January 11, 2003, the School Board's public information officer told the local newspaper that two other students saw Clark pull a knife on another student and that Clark was temporarily suspended pending the outcome of the investigation.
In his petition, Clark sought reinstatement to his former position as a tenured teacher, along with back pay, bonuses, raises, vacation pay, or any other emolument of payment or compensation from *108 January 10, 2003, to the present. He also sought damages for the mental anguish, emotional distress, and defamation of character caused by the defendants' actions regarding the January 8th and 9th events.[1]
The defendants filed a peremptory exception raising the objection of prescription,[2] asserting that Clark's claims arising from his allegations of wrongful termination and defamation were subject to the one-year liberative prescriptive period applicable to delictual actions provided for in LSA-C.C. art. 3492. The defendants noted that Clark's petition alleged conduct occurring over a three to four-day period from January 8 to 11, 2003. They maintained that Clark's causes of action arising from his allegations of wrongful termination and defamation arose at the latest on January 11, 2003, the date by which Clark had actual notice of the alleged tortious actions of the School Board. Since Clark did not file suit until February 6, 2004, the defendants urged that his claims were barred by prescription. The defendants also contended that Clark was not entitled to the protection of the teacher tenure law since he had voluntarily resigned, and therefore, the School Board's failure to terminate him pursuant to those provisions did not provide a basis for suspending prescription on the wrongful termination claim.
In response, Clark urged that LSA-R.S. 17:443 of the teacher tenure law requires that a hearing be held before a tenured teacher can be terminated, and as one was never held, prescription on his wrongful termination claim never began to run. He submitted that before any determination can be made on the issue of prescription, the voluntariness of his resignation must be determined. He argued that if the resignation was not voluntary, it is ineffective, and should the School Board desire to dismiss him, it must comply with the requirements of LSA-R.S. 17:443. Further, he argued that the claim for reinstatement, a personal one based on contract, is subject to a 10-year prescriptive period.
Following a hearing, the trial court denied the exception raising the objection of prescription.[3] Pursuant to an application for supervisory writs to this court, the defendants sought review of the trial court's judgment, which was denied. Clark v. Wilcox, 04-2254 (La.App. 1st Cir.12/30/04) (unpublished writ action). Subsequently, the defendants sought a writ of certiorari from the supreme court, which was granted, and the matter was remanded to this court for the issuance of a written opinion following briefing and argument by the parties. Clark v. Wilcox, 05-0254 (La.4/22/05), 899 So.2d 583.

Discussion
On January 8 and 9, 2003, Clark had discussions with the School Board's human resources officer concerning the knife-pulling allegation by a student. During these discussions, the officer allegedly threatened that Clark would be facing termination *109 if he did not resign. After their initial conversation on January 9th, Clark received a call from a deputy with the sheriff's office, who informed him that he was wanted for questioning and that a warrant had been issued for his arrest. Later the same day, Clark submitted his resignation. Clark alleged in his petition that two days later, on January 11, 2003, the public information officer for the School Board reported the incident to the local newspaper. On February 6, 2004, Clark filed the instant suit seeking reinstatement to his teaching position, as well as damages for defamation and wrongful termination, to which the defendants raised the issue of prescription.

Wrongful Termination
Generally, a claim for wrongful discharge or termination is a delictual action subject to a one-year prescriptive period provided for in LSA-C.C. art. 3492. This prescriptive period commences to run when the plaintiff has actual or constructive notice of the alleged wrongful termination. Nicholson v. St. John the Baptist Parish School Board, 97-846 (La.App. 5th Cir.1/14/98), 707 So.2d 94, 95, writ not considered, 98-0411 (La.3/27/98), 716 So.2d 879; Rozas v. Department of Health and Human Resources, 522 So.2d 1195, 1196 (La.App. 4th Cir.), writ denied, 523 So.2d 1338 (La.1988); see Velez v. Carbonett, 99-2891 (La.App. 1st Cir.12/22/00), 779 So.2d 12, 14.
The defendants argued that the petition was untimely, on its face, because his claims were based on alleged wrongful acts occurring more than one year prior to the filing of the suit. They submitted that Clark had notice of the tortious act, that is, the alleged "forced" resignation, the resulting damages, and the causal connection between the two no later than January 9, 2003, the date on which he submitted a resignation. Clark, on the other hand, argued that the prescriptive period was interrupted because the defendants failed to comply with the teacher tenure law's procedural provisions, and therefore, prescription never began to run on the termination claim.[4]
The removal of a teacher is governed by the teacher tenure law, LSA-R.S. 17:441 et seq., which is designed to protect the job security of teachers in the best interest of the public school system. Jackson v. St. Landry Parish School System, 407 So.2d 51, 53 (La.App. 3rd Cir. 1981), writs denied, 412 So.2d 98 and 99 (La.1982). The teacher tenure law sets forth detailed procedures which must be adhered to in order to perfect the proper removal of a teacher who has attained permanent status. Jackson, 407 So.2d at 55. Prior to its amendment by 2003 La. Acts, No. 273, § 1, LSA-R.S. 17:443 provided:
A. A permanent teacher shall not be removed from office except upon written and signed charges of willful neglect of duty, or incompetency, or dishonesty, or of being a member of or contributing to any group, organization, movement, or corporation that is by law or injunction prohibited from operating in the state of Louisiana, and then only if found guilty after a hearing by the school board of the parish or city, as the case may be, which hearing may be private or public, at the option of the teacher. At least twenty days in advance of the date of the hearing, the superintendent with approval of the school board shall furnish the teacher with a copy of *110 the written charges. Such statement of charges shall include a complete and detailed list of the specific reasons for such charges and shall include but not be limited to the following: date and place of alleged offense or offenses, names of individuals involved in or witnessing such offense or offenses, names of witnesses called or to be called to testify against the teacher at said hearing, and whether or not any such charges previously have been brought against the teacher. The teacher shall have the right to appear before the board with witnesses in his behalf and with counsel of his selection, all of whom shall be heard by the board at said hearing. For the purpose of conducting hearings hereunder, the board shall have the power to issue subpoenas to compel the attendance of all witnesses on behalf of the teacher. Nothing herein contained shall impair the right of appeal to a court of competent jurisdiction.
B. If a permanent teacher is found guilty by a school board, after due and legal hearing as provided herein, on charges of willful neglect of duty, or of incompetency, or dishonesty, or of being a member of or contributing to any group, organization, movement, or corporation that is by law or injunction prohibited from operating in the state of Louisiana, and ordered removed from office, or disciplined by the board, the superintendent with approval of the board shall furnish to the teacher a written statement of recommendation of removal or discipline, which shall include but not be limited to the exact reason(s), offense(s), or instance(s) upon which the recommendation is based. Such teacher may, not more than one year from the date of the said finding, petition a court of competent jurisdiction for a full hearing to review the action of the school board, and the court shall have jurisdiction to affirm or reverse the action of the school board in the matter. If the finding of the school board is reversed by the court and the teacher is ordered reinstated and restored to duty, the teacher shall be entitled to full pay for any loss of time or salary he or she may have sustained by reason of the action of the said school board.
Once a teacher achieves permanent teacher status, he is subject to removal only for cause and in the manner set forth in LSA-R.S. 17:443. State ex rel. DeBarge v. Cameron Parish School Board, 202 So.2d 34, 37 (La.App. 3rd Cir.), writ denied, 251 La. 386, 204 So.2d 572 (1967).
The record clearly reflects that the formal removal procedure did not take place in this case. If Clark's resignation was not voluntary and instead constituted a removal,[5] it would not have had any legal effect at that time in light of the School Board's failure to comply with the teacher tenure law.[6]See Jackson, 407 So.2d at 55; see also Brown v. Red River Parish School Board, 469 So.2d 1110, 1115 (La.App. 2nd Cir.1985). In such a case, Clark would have been entitled to be reinstated to a teaching position in the East Baton Rouge Parish school system.[7]See Jackson, 407 So.2d at 55.
*111 When a permanent teacher is found guilty by a school board after a due and legal hearing, LSA-R.S. 17:443(B) affords a teacher a one-year period in which to seek judicial review by a district court.[8]Fields v. Rapides Parish School Board, 231 La. 914, 93 So.2d 214, 216 (1957). However, where there has been no formal school board hearing, the one-year limitation in LSA-R.S. 17:443 is inapplicable. Jackson, 407 So.2d at 55. Nonetheless, if a tenured teacher is terminated without compliance with the provisions of LSA-R.S. 17:443, such action would constitute a wrongful act, giving rise to a cause of action that is delictual in nature and subject to LSA-C.C. art. 3492's one-year prescriptive period. See Jackson v. Ascension Parish School Bd., 573 So.2d 501, 503 (La. App. 1st Cir.), writ denied, 569 So.2d 989 (La.1990).
As to his claim for wrongful termination, we conclude that Clark's petition on its face clearly was filed more than one year after he had actual or constructive notice of the alleged wrongful termination. With respect to this claim, Clark failed to prove the interruption or suspension of the applicable one-year limitation period imposed by LSA-C.C. art. 3492. Furthermore, in an effort to preserve his claim for reinstatement, Clark urged the applicability of the 10-year prescriptive period applicable to contracts. Based on the allegations of Clark's petition, we conclude that Clark's action is not a suit on a contract, as the primary basis for his claim for reinstatement is the alleged failure of the public body to follow the express provisions of the tenure law. See Hill v. Caddo Parish School Board, 250 So.2d 446, 449 (La.App. 2nd Cir.1971). Accordingly, we conclude that the trial court erred in overruling the defendants' objection of prescription as to Clark's wrongful termination claim.

Defamation
To prevail in an action for defamation, the plaintiff must prove: defamatory words,[9] publication, falsity, malice (actual or implied), and resulting injury. Steed v. St. Paul's United Methodist Church, 31,521 (La.App. 2nd Cir.2/24/99), 728 So.2d 931, 940, writ denied, 99-0877 (La.5/7/99), 740 So.2d 1290, citing Cangelosi v. Schwegmann Brothers Giant Super Markets, 390 So.2d 196, 198 (La.1980). Thus, the truth or falsity of the School Board's words are at the heart of a defamation action; whereas, the truth value of the School Board's words is not at issue in *112 an action under LSA-R.S. 17:443. Brown, 469 So.2d at 1115.
Claims for defamation are delictual in nature and are subject to LSA-C.C. art. 3492's one-year prescriptive period, which commences to run from the day injury or damage is sustained. See Wiggins v. Creary, 475 So.2d 780, 781 (La.App. 1st Cir.), writ denied, 478 So.2d 910 (La. 1985). For prescription purposes, damages are sustained from the date the injury is inflicted, if immediately apparent to the victim, even though the extent of the damages may not yet be known. Wiggins, 475 So.2d at 781. This court in Wiggins and Rice v. Felterman, 00-2525 (La.App. 1st Cir.3/28/02), 814 So.2d 696, has found that knowledge of the damage-causing publication by the plaintiff is required for the commencement of the one-year prescriptive period. Rice, 814 So.2d at 699; Wiggins, 475 So.2d at 781; see Rozas, 522 So.2d at 1196-97.
The defendants argued that the trial court erred in failing to grant their exception raising the objection of prescription based on the fact that Clark admitted in his petition that he had actual notice of the alleged defamatory actions of the School Board's employees no later than January 11, 2003. In examining Clark's petition, we note the following pertinent allegations: the school's principal reported the alleged knife-pulling incident to the sheriff's office on January 8, 2003; a sheriff's deputy telephoned Clark's house on January 9, 2003, and advised him that he was wanted for questioning and that a warrant had been issued for his arrest; and certain information was released to the local paper by the School Board's public information officer on January 11, 2003. According to Clark's petition, the school's principal, the School Board's public information officer, and the human resource officer intentionally and maliciously misstated and misrepresented the facts to the authorities and the general public.
These allegations make it clear that on January 9th Clark was aware that information had been communicated by the school's principal to the local law enforcement authorities. Thus, we conclude from the face of the petition that Clark's defamation action relative to the January 8th communication to the sheriff's office was filed outside of the one-year prescriptive period.
Relative to the running of prescription on the claim for defamation regarding communication to the local paper, Clark does not make any allegation other than that the communication by the School Board's public information officer to the local newspaper occurred on January 11, 2003. Absent from the petition is an allegation that Clark did not obtain knowledge of this communication within one year of that date or that he was prevented from filing a defamation claim with respect to this communication within the one-year time frame. Thus, we conclude that from the face of the petition Clark's defamation action relative to the January 11th communication to the local paper was filed outside of the one-year prescriptive period.
Accordingly, it was incumbent on Clark to show that his claims related to the January 8th and 11th communications were not prescribed. See Campo v. Correa, 01- 2707 (La.6/21/02), 828 So.2d 502, 508. The record on appeal is devoid of any evidence by Clark at the hearing on the exceptions. Therefore, we conclude that any defamation claims that he may have had with respect to the January 8th communication to the local authorities and the January 11th communication to the local paper had prescribed by the time of his February 6, 2004 filing.
*113 In so holding, we are mindful that each and every publication, or communication, of a defamatory statement to a third person constitutes a separate cause of action. Wiggins, 475 So.2d at 781. However, we note that Clark did not advance any republication theory, i.e., publishing in the newspaper or subsequent criminal proceedings,[10] in his petition so as to make a timely claim for defamation. Accordingly, the trial court erred in failing to sustain the defendants' objection of prescription relative to the defamation claims asserted in Clark's petition.

Decree
For the foregoing reasons, the defendants' application for supervisory writs is granted with respect to Clark's claims arising from his allegations of wrongful termination and defamation. The trial court judgment overruling the defendants' exception is reversed, and judgment is rendered in favor of the defendants, sustaining their objection of prescription relative to Clarks' claims arising from his allegations of wrongful termination and defamation and dismissing these actions. Costs of this writ application are assessed to Arthur A. Clark.
WRIT GRANTED; JUDGMENT REVERSED AND RENDERED.
NOTES
[1] On May 14, 2004, Clark filed a petition for a writ of mandamus in connection with this incident, seeking reinstatement and back pay.
[2] The defendants filed a separate exception raising the objection of prescription, as well as one asserting the objection of no cause of action, relative to the mandamus action.
[3] The exceptions relating to the mandamus action were also denied. However, the trial court signed a judgment on the same date that denied and dismissed Clark's petition for writ of mandamus. No action has been taken by Clark relative to the judgment dismissing his petition for writ of mandamus; thus, that portion of the defendants' writ action pertaining to the denial of their exception in the mandamus action is moot.
[4] The plaintiff has the burden of proving an interruption or suspension of the prescriptive period when his action has prescribed on the face of his petition. Nicholson, 707 So.2d at 95.
[5] In the case of a voluntary resignation, a teacher does not come within the provisions and protection of the tenure law. Thus, if Clark's departure was the result of a voluntary resignation, the School Board would not have been required to follow the provisions of the tenure law.
[6] The School Board had no right to remove Clark from his position without first giving him a copy of the formal written charges and a hearing as prescribed by the statute. See State ex rel. DeBarge, 202 So.2d at 37.
[7] A writ of mandamus pursuant to LSA-C.C.P. arts. 3861 through 3866 is the appropriate remedy to enforce a teacher's rights where a permanent teacher is discharged without compliance with the provisions of the tenure law. The duty of a school board to follow the statutory provisions governing dismissal of a permanent teacher is purely ministerial and may be coerced by mandamus. A teacher covered by the tenure law who has been discharged without compliance with the provisions of the law is entitled to a writ of mandamus directing reinstatement and, incidentally, payment of salary. Hill v. Caddo Parish School Board, 250 So.2d 446, 449 (La. App. 2nd Cir.1971), citing State ex rel. Fields v. Rapides Parish School Board, 227 La. 290, 79 So.2d 312, 314 (1955). In this case, Clark filed a petition for writ of mandamus, which was dismissed by the trial court. There is no record of an appeal from that decision.
[8] This provision contemplates the institution of an ordinary suit, by regular petition and citation, and after the filing of an answer by the school board, a trial on the merits of the controversy. Houeye v. St. Helena Parish School Board, 220 La. 252, 56 So.2d 413, 415 (1951).
[9] When words expressly or implicitly accuse the plaintiff of criminal conduct, the words are considered defamatory per se. When words are defamatory per se, the elements of falsity and malice are presumed, although this presumption may be rebutted by the defendant. Steed v. St. Paul's United Methodist Church, 31,521 (La.App. 2nd Cir.2/24/99), 728 So.2d 931, 940, writ denied, 99-0877 (La.5/7/99), 740 So.2d 1290.
[10] An action for defamation arising out of allegations made in judicial proceedings and against a party to those proceedings cannot be brought until those proceedings are terminated. Ballex v. Naccari, 95-0057 (La.App. 4th Cir.6/7/95), 657 So.2d 511, 512. One reason for that rule is that the cause of action does not arise until the party making the allegations has had the opportunity of proving the truth of the allegations in the proceedings in which they are made. Loew's, Inc. v. Don George, Inc., 237 La. 132, 110 So.2d 553, 561 (1959).