# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-31133
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

May 17, 2017

Lyle W. Cayce
Clerk

CORY JENKINS,

      Plaintiff - Appellant

v.

BRISTOL-MYERS SQUIBB COMPANY; OTSUKA AMERICA
PHARMACEUTICAL, INCORPORATED,

      Defendants - Appellees

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:14-CV-2499

---

Before DAVIS, SOUTHWICK, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Plaintiff Cory Jenkins filed this lawsuit on October 17, 2014, asserting two claims under the Louisiana Products Liability Act (LPLA). The district court held that both of Jenkins's claims had prescribed, and entered summary judgment in favor of Defendants Bristol-Myers Squibb Company and Otsuka

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-31133

America Pharmaceutical, Incorporated. Finding the district court's opinion to be thorough, well-reasoned, and correct, we AFFIRM.

## I.

We review a district court's grant of summary judgment *de novo*, viewing all facts and drawing all inferences in a light most favorable to the non-moving party.[1] Summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]

## II.

## A.

Jenkins suffers from bipolar disorder, for which he began to take Abilify in October 2010. Abilify is an FDA-approved medication. However, like many FDA-approved medications, it has potential side-effects. One of those potential side-effects is tardive dyskinesia. Tardive dyskinesia is a severe neurological disorder that causes involuntary muscle movements, or twitching.

## B.

Jenkins "first noticed twitching in his legs and arms in the late Fall of 2012 and the early part of 2013." In April 2013, Dr. Dean A. Hickman of Ochsner Medical Center in New Orleans, Louisiana, told Jenkins to stop taking Abilify because he suspected that Abilify may have given him tardive dyskinesia which may be causing him to twitch. Jenkins complied, and his twitch went away. Jenkins even went so far as to cancel a May 2013 doctor's appointment because he "was off Abilify and that's what was causing" the twitching.

With limited exceptions inapplicable here, actions brought under the LPLA are subject to a one year prescriptive period, which "commences to run

---

[1] *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016).

[2] Fed. R. Civ. P. 56(a).

from the day injury or damage is sustained."[3] In Louisiana, damages are said to be sustained "when [the damage] has manifested itself with sufficient certainty to support accrual of a cause of action."[4]

The district court held that Jenkins first sustained injuries in April 2013. "Tremors, fidgeting, and jaw clenching," the court wrote, "are cognizable injuries that can support a cause of action" under Louisiana law. Jenkins argues that "there is a serious factual dispute over whether [he] had even developed" tardive dyskinesia in April 2013. Yet even assuming that such a dispute exists, it is immaterial and therefore cannot create a genuine dispute of material fact.

"For purposes of summary judgment, an issue is 'material' if it involves a fact that might affect the outcome of the suit under the governing law."[5] Under Louisiana law, "[t]he commencement of prescription does not . . . wait for the pronouncement of a victim's physician or of an expert."[6] A "cause of action accrues when damages are first suffered."[7] "[T]he crucial date for the prescriptive period is the date of injury and not the date of diagnosis."[8]

Jenkins does not dispute that he sustained "tremors, fidgeting, and jaw clenching" in April 2013. At that moment, both of his LPLA claims accrued.

## C.

We turn next to the doctrine of contra non valentem, which ensures that "Louisiana's one-year prescriptive period does not begin to run until the

---

[3] LA. CIV. CODE ANN. art. 3492.

[4] *Cole v. Celotex Corp.,* 620 So. 2d 1154, 1156 (La. 1993).

[5] *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000) (internal quotations and alterations omitted).

[6] *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 300 (5th Cir. 1999) (citing *Hunter v. Sisters of Charity of Incarnate Word*, 236 So. 2d 565, 568 (La. Ct. App. 1970)).

[7] *Grenier v. Med. Eng'g Corp.*, 243 F.3d 200, 204 n.2 (5th Cir. 2001).

[8] *Crosby v. Am. Med. Sys., Inc.*, No. CIV. A. 89-4882, 1991 WL 194724, at *2 (E.D. La. Sept. 20, 1991).

plaintiff has actual or constructive knowledge of the tortious act, the damage, and the causal relationship between the tortious act and the damage."[9] At its heart, contra non valentem is an equitable doctrine that tolls prescription for as long as "a plaintiff acts reasonably to discover the cause of a problem."[10] Its application depends upon the "reasonableness of a plaintiff's action or inaction."[11] "[P]rescription does not run as long as it was reasonable for the victim not to recognize that the [injury] may be related to the [tort]."[12]

Jenkins argues "that a reasonable person would [not] have acquired the knowledge necessary to commence prescription" until October 18, 2013, when Dr. David Houghton, a neurologist, referred Jenkins to another doctor in order to address what Houghton believed to be an undiagnosed, movement-based disorder. Jenkins admits that Dr. Houghton did not tell him that his twitching was related to Abilify. Nonetheless, Jenkins asserts – without explanation – that he first "acquired the knowledge necessary to commence prescription" on October 18, 2013.

We disagree. Tolling pursuant to contra non valentem ends, and the prescriptive period begins, on "the date the injured party discovers or should have discovered the facts upon which his cause of action is based."[13] Tolling does not continue until "conclusive, dispositive proof of a causal connection between the suspected injury and the putative tortfeasor is established."[14] Jenkins knew that his twitching may have been related to Abilify in April 2013. He said as much in his deposition under oath.

---

[9] *Knaps v. B & B Chem. Co.*, 828 F.2d 1138, 1139 (5th Cir. 1987); *see also Cole,* 620 So. 2d at 1156.

[10] *Chevron USA, Inc. v. Aker Mar., Inc.*, 604 F.3d 888, 894 (5th Cir. 2010).

[11] *Jordan v. Employee Transfer Corp.*, 509 So. 2d 420, 423 (La. 1987).

[12] *Ibid.* (quoting *Griffin v. Kinberger*, 507 So. 2d 821, 823—24 (La. 1987)).

[13] *Eastin v. Entergy Corp.*, 2003-C-1030, p. 7 (La. 02/06/04); 865 So.2d 49, 55.

[14] *Carter v. Matrixx Initiatives, Inc.*, 391 F. App'x 343, 345–46 (5th Cir. 2010) (unpublished).

No. 16-31133

Q. And so do you remember that Dr. Hickman [in April 2013] told you that he was taking you off of [Abilify] because he was concerned about the movement issues you were having?

A. He did specifically say to me that the movement issues I was having could possibly be caused by a medication. I mean, he couldn't – He couldn't explain it any other way other than that.

. . .

Q. But you do understand that [Dr. Hickman] took [you off Abilify] because of these movement issues including the facial component, jaw clenching?

A. And also — I'm sorry.

Q. Can you answer the question and then whatever you want to say?

A. Yes, he did — I was under the impression he was taking me off of Ability to stop what was occurring as far as that was concerned. But I took it as this was going to be an easy fix. Basically I stop taking this medication and this whatever was occurring in my facial expressions was gonna stop and we just move on with life. I didn't think it was something serious. Let's say that.

Based upon this sworn testimony, we agree with the district court that Jenkins's LPLA claims are time-barred. Filed on October 17, 2014, they accrued in April 2013 and prescribed twelve months later.[15]

---

[15] Jenkins further argues that because he was simultaneously taking multiple medications, his LPLA claims should not accrue until April 2014, when he was first able to determine "that his movement issues were caused *solely* by Abilify." Appellant's Br. at 21—22 (emphasis in original). This argument too lacks merit. The question, with respect to contra non valentem, is causation – not sole causation. When, in April 2013, Jenkins learned that

No. 16-31133

## D.

Lastly, Jenkins argues that even if we hold that his LPLA claims have prescribed, we should remand for further discovery pursuant to Federal Rule of Civil Procedure 56(d). We have repeatedly "foreclosed a party's contention on appeal that it had inadequate time to marshal evidence to defend against summary judgment when the party did not seek Rule 56[(d)] relief before the [district court issued its] summary judgment ruling."[16] Because Jenkins did not seek Rule 56(d) relief before the district court issued its summary judgment ruling, his request for Rule 56(d) relief is now foreclosed.

## III.

The ruling of the district court is AFFIRMED.

---

his injuries "may be related to" Abilify, *see Carter*, 391 F. App'x at 345–46, his LPLA claims against those who manufactured, marketed, and distributed Abilify accrued.

[16] *Ferrant v. Lowe's Home Centers, Inc.*, 494 F. App'x 458, 463 (5th Cir. 2012) (unpublished) (alteration in original) (internal quotations omitted) (citing *Potter v. Delta Air Lines, Inc.*, 98 F.3d 881, 887 (5th Cir. 1996)).