# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 21, 2023

Lyle W. Cayce
Clerk

No. 22-30405

———

Andrew Bruno,

*Plaintiff—Appellant*,

*versus*

Biomet, Incorporated; Unidentified Parties; Zimmer, Incorporated,

*Defendants—Appellees*.

———

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:20-CV-2706

———

Before Higginbotham, Smith, and Engelhardt, *Circuit Judges*.
Patrick E. Higginbotham, *Circuit Judge*:

In this diversity case, Andrew Bruno sued Biomet Inc. and Zimmer, Inc. (collectively, "Biomet") under the Louisiana Products Liability Act ("LPLA"). The district court found Bruno's claims were prescribed and granted summary judgment in favor of Biomet. Finding that the ultimate question of prescription is best left for the jury to determine, we VACATE the district court's summary judgment order and REMAND for further proceedings consistent with this opinion, including any additional discovery the district court may order.

No. 22-30405

## I.

In December 2016, Andrew Bruno had shoulder surgery to implant a prosthetic device with parts manufactured by Biomet. Two-weeks post-operation, Bruno followed-up with his surgeon, Dr. Doulens, and reported some clear drainage at the bottom of his incision. Although the doctor did not think an infection caused the drainage, he prescribed antibiotics. Over the next 14 months, Bruno repeatedly returned to the hospital with post-op complications. Bruno's doctor believed the complications were caused by a superficial skin-related infection, possibly a suture reaction. Then, in January 2017, when a sampling of the drainage tested positive for *Enterobacter cloacae* bacteria, Dr. Doulens recommended an incision and drainage procedure. In May 2017, the doctor performed the procedure, finding the device was normal with no evidence of infection. With the continuing problems, Dr. Doulens and Bruno discussed options. Bruno elected to remove the device. By this point, there was an "obvious . . . deep infection" affecting the joint and the device. Once a prosthesis is infected, according to expert reports in the record, it is difficult to clear and doctors recommend removing it. On November 1, 2018, Dr. Doulens performed the removal surgery.

On September 25, 2019, Biomet sent a letter to hospitals advising that certain medical devices, including the kind implanted in Bruno, were part of a Field Safety Corrective Action because "these devices were subject to cleaning processes that could result in elevated levels of bacterial endotoxin and residual debris remaining on the devices." Bruno's hospital notified Bruno about Biomet's letter that same month but advised him that "[t]he devices used during [his] procedure were sterilized and therefore cannot cause infection."

2

No. 22-30405

Bruno brought this products liability suit against Biomet on September 25, 2020, seeking damages under the LPLA.[1] Biomet moved for summary judgment, arguing that Bruno's claims were prescribed and, alternatively, that Bruno failed to provide sufficient evidence that the device was unreasonably dangerous.[2] Finding Bruno's claims were prescribed, the district court granted summary judgment.[3] Bruno timely appealed.

## II.

We review grants of summary judgment *de novo*.[4] "Summary judgment is appropriate where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[5] We view the evidence in the light most favorable to the non-movant and make all reasonable inferences in their favor.[6]

---

[1] Bruno filed in Louisiana state court. Biomet removed the case to the Eastern District of Louisiana under diversity jurisdiction.

[2] Biomet also argued that many of Bruno's claims were barred by the LPLA, as the LPLA "provides the exclusive theories of liability for manufacturers for damage caused by their products," *Marable v. Empire Truck Sales of La.*, LLC, 2016-0876, p. 14 (La. App. 4 Cir. 6/23/17), 221 So. 3d 880, 893, *writ denied*, 2017-1469 (La. 11/13/17), 230 So. 3d 210. The district court found that Bruno's negligence and tort-related claims were barred by the LPLA. Bruno does not appeal this finding.

[3] The district court did not address whether Bruno provided sufficient evidence to support his claims.

[4] *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 995 F.3d 384, 388 (5th Cir. 2021) (citation omitted).

[5] *Id.* (quoting FED. R. CIV. P. 56(a)).

[6] *Id.* (citation omitted).

No. 22-30405

## III.

## A.

"Louisiana law provides a one-year liberative prescription period for products-liability cases."[7] Typically, "prescription commences to run from the day injury or damage is sustained."[8] But "[u]nder the doctrine of *contra non valentem*, the prescriptive period begins to run 'on the date the injured party discovers or should have discovered the facts upon which his cause of action is based.'"[9] The doctrine tolls prescription under any of four "exceptional circumstances," one of which is "where the cause of action is not known or reasonably knowable by the plaintiff," termed the "discovery rule."[10]

Under the discovery rule, "[c]onstructive knowledge . . . requires more than a mere apprehension something might be wrong."[11] However, "when a plaintiff suspects something is wrong, he must 'seek out those whom he believes may be responsible for the specific injury.'"[12] "The duty to act requires an investigation of the injury."[13] The discovery rule "applies

---

[7] *Id.* (citing LA. CIV. CODE art. 3492 and *Stewart Interior Contractors, L.L.C. v. MetalPro Indus., L.L.C.*, 130 So. 3d 485, 489 (La. Ct. App. 2014)).

[8] *Id.* (quoting LA. CIV. CODE art. 3492).

[9] *Chevron USA, Inc. v. Aker Mar., Inc.*, 604 F.3d 888, 893 (5th Cir. 2010) (quoting *Griffin v. Kinberger*, 507 So. 2d 821, 823 (La. 1987)).

[10] *Taxotere*, 995 F.3d at 390–91 (quoting *Morgan v. Entergy New Orleans, Inc.*, 2016-1250, p. 5, 13 (La. App. 4 Cir. 12/6/17); 234 So. 3d 113, 116, 120).

[11] *Aker Mar.*, 604 F.3d at 894 (quoting *Strata v. Patin*, 545 So. 2d 1180, 1189 (La. App. 4 Cir. 1989)).

[12] *Id.* (quoting *Jordan v. Emp. Transfer Corp.*, 509 So. 2d 420, 423 (La. 1987)).

[13] *Taxotere*, 995 F.3d at 392 (citing *Jordan*, 509 So. 2d at 423–24 and *Rozas v. Dep't of Health & Hum. Res., State of La.*, 522 So. 2d 1195, 1197 (La. Ct. App. 1988)).

No. 22-30405

only when such ignorance is not willful and does not result from negligence."[14] In other words, "[w]hen a plaintiff acts reasonably to discover the cause of a problem, 'the prescriptive period [does] not begin to run until [he has] a reasonable basis to pursue a claim against a specific defendant.'"[15] In this inquiry, "reasonableness is assessed 'in light of [the plaintiffs'] education [and] intelligence.'"[16] "Summary judgment is inappropriate where reasonable minds could differ as to the applicability of *contra non valentem*."[17]

As Bruno filed his complaint on September 25, 2020, his claims are timely if the prescription period began on or were tolled until September 25, 2019.[18] Our analysis proceeds in two parts. We first ask whether Bruno's claims were facially prescribed. As that is uncontested, we ask whether *contra non valentem* tolled the prescription period until the suit was filed. That question, as we will explain, is best left to a jury.

---

[14] *Id.* at 391 (quoting *Cartwright v. Chrysler Corp.*, 232 So. 2d 285, 287 (La. 1970)).

[15] *Aker Mar.*, 604 F.3d at 894 (quoting *Jordan*, 509 So. 2d at 424) (second and third alteration in original).

[16] *Taxotere*, 995 F.3d at 393 (quoting *Campo v. Correa*, 2001-2707, p. 12 (La. 06/21/02); 828 So. 2d 502, 511) (alterations in original).

[17] *Id.* at 389 (citing *M.R. Pittman Grp., L.L.C. v. Plaquemines Par. Gov't*, 2015-860, p. 19 (La. App. 4 Cir. 12/2/15); 182 So. 3d 312, 324).

[18] *See Id.* at 388.

No. 22-30405

**B.**

Three opinions guide our hand, *In re Taxotere*, *Hoerner v. Wesley–Jensen, Inc.*,[19] and *Jenkins v. Bristol-Myers Squibb Co.*[20] We address each in turn.

In *Taxotere*, a group of women permanently lost their hair after undergoing chemotherapy treatment for breast cancer.[21] Under Louisiana law, "*contra non valentem* tolled the prescription period until the point when [the women] through the exercise of reasonable diligence should have 'considered [the chemotherapy drug] as a potential root cause of'" one's hair loss.[22] "A reasonable inquiry into the cause of one's persistent hair loss would likely include consult[ing] with doctors," or "search[ing] for the cause herself."[23] One plaintiff "asked her dermatologist to give her something to make her hair regrow, but she did not inquire into the cause of the hair loss or its persistence."[24] By failing to consult with doctors or explore options about the cause of their persistent hair loss, the women "did not act reasonably in light of their injuries."[25] We noted that with a quick internet

_____

[19] 95–0553, p. 2 (La. App. 4 Cir. 11/20/96); 684 So. 2d 508, *writ denied*, 96–30347 (La. 2/7/97); 688 So. 2d 501.

[20] 689 F. App'x 793, 795–97 (5th Cir. 2017) (unpublished) (per curiam).

[21] *Id.* at 387.

[22] *Id.* at 392–93 (quoting *Oil Ins. Ltd. v. Dow Chem. Co.*, 2007-0418, p. 9 (La. App. 1 Cir. 11/2/07); 977 So. 2d 18, 23, *writ denied*, 2007-2319 (La. 2/22/08); 976 So. 2d 1284).

[23] *Id.* at 393. While the Supreme Court of Louisiana guides that reasonableness is assessed "in light of [the plaintiffs'] education [and] intelligence," *id.* at 393 (quoting *Campo*, 88 So. 2d at 511), we concluded that "[t]o the extent what was discovered was difficult to understand, the patient's consulting her oncologist, dermatologist, or other treating physician as to the meaning of the information would be part of diligence." *Id.*

[24] *Id.*

[25] *Id.* at 395.

search the women could have discovered the drug was a possible explanation for their hair loss.[26] Because the women were "charged with knowledge of all that a reasonable inquiry would have revealed," we held that they failed to "raise[] a genuine dispute of material fact that a reasonable inquiry would have left them without knowledge" and affirmed summary judgment.[27]

In *Hoerner*, a plaintiff developed an eye infection from her contact lenses, ultimately resulting in the need for a corneal transplant.[28] The plaintiff argued the prescriptive period began to run when she read an article on the increased likelihood of infection in users of extended-wear contact lenses, not from the date of her corneal transplant, because she was unaware at the time of her surgery that her contact lenses were the cause of her infection.[29] Instead, the plaintiff "believed that she was the unfortunate recipient of an ubiquitous germ like one who contracts measles or a cold."[30] A Louisiana appellate court agreed, finding that the plaintiff was not put on notice of any fault of the contact lens manufacturer until she read the article.[31]

In contrast, in *Jenkins*, we affirmed a summary judgment finding that a plaintiff had constructive notice that his medication was causing his twitching when his doctor told him to stop taking a medication because he suspected it may be causing the plaintiff's twitch.[32] Jenkins "knew that his

_____

[26] *Id.* at 394.

[27] *Id.* at 394–95 (citing *Cartwright*, 232 So. 2d at 287).

[28] 684 So. 2d at 509.

[29] *Id.* at 510.

[30] *Id.*

[31] *Id.* at 514.

[32] *Jenkins*, 689 F. App'x at 795–97. "Jenkins knew that his twitching may have been related to Abilify [more than one year prior to the filing of the suit] in April 2013." *Id.* at 796. We found that testimony persuasive in that case.

[medical issues] may have been related" to a prescription medicine when, after experiencing tremors, his doctor expressed concerns about the medication.[33] We found, based on the undisputed facts before the Court, that Jenkins, for more than a year, was aware of cognizable injuries potentially connected to the medicine he was taking.[34]

## C.

Bruno argues the prescription period began in September 2019 when his hospital notified him of Biomet's poor cleaning process. Biomet counters that the period began at latest when Bruno had the device surgically removed.[35]

Unlike the women in *Taxotere*, Bruno did consult his doctor, who thought his infection could have come from a suture reaction.[36] And unlike the defendants in *Taxotere*, Biomet presented no evidence that Bruno could have discovered its device caused the infection. Although Biomet did disclose when it discovered the problem with its devices cleaning protocols, it did not notify hospitals *until* September 2019.

And like the eye patient in *Hoerner*, Bruno alleges he was not aware the device could cause the infection—indeed, he was told expressly it could not. Just as the court in *Hoerner* held that the patient was not put on notice of any fault of the contact lens manufacturer until she read an article linking the

---

[33] *Id.* at 796–97.

[34] *Id.* at 797.

[35] Biomet argues that like the women in *Taxotere*, Bruno had constructive notice of possible causes of the infection and "failed to act reasonably in light of his injuries."

[36] *See Taxotere*, 995 F.3d at 393–95.

two, Bruno argues he was not put on notice of any fault of Biomet's until he received notice of its letter.

Biomet argues that like the plaintiff in *Jenkins*, Dr. Doulens' actions placed Bruno on constructive notice that Biomet could be at fault for his injuries. In *Jenkins*, we affirmed summary judgment against a plaintiff when his doctor told him to stop taking a medication because he suspected it may have caused the plaintiff's twitch.[37] Unlike the doctor in *Jenkins* however, Bruno's doctor never told Bruno he suspected the device was causing Bruno's injuries. Instead, Dr. Doulens recommended removing the device once it was obviously infected because such infections are challenging to clear, a common medical response.

On the one hand, a jury could reasonably determine that *contra non valentem* tolled the prescription period until September 2019—given Bruno's consultations with his doctor, a medical professional. But on the other hand, a jury could just as reasonably determine that *contra non valentem* tolled prescription until some point in time before September 2019. It is unclear whether Bruno stopped suffering complications from infections after the removal, such that his recovery after the device's removal would have put him on notice of any fault of Biomet's before the letter was received.[38] As the

---

[37] *Jenkins*, 689 F. App'x at 795.

[38] *See Campo*, 828 So. 2d at 510–11 ("Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry."). We reject the implicit assertion that, as a matter of law, an individual is not allowed to rely on the advice and counsel of a treating physician on complex matters of medicine. But to that end, the parties fail to cite evidence that would tend to support whether Bruno's post-removal symptoms or complications were like those he had pre-removal, if his treatments pre- and post-removal were the same, or if the frequency of his doctor's visits changed pre- and post-removal.

record stands, when the prescriptive period expired, and whether *contra non valentum* applies, is a question best left for the jury.

## IV.

Alternatively, Biomet argues it is entitled to summary judgment because Bruno failed to produce sufficient evidence for his LPLA claims.[39] The district court did not address this ground for summary judgment. To be sure, "we may affirm summary judgment on any basis supported by the record even if not reached by the district court."[40] That said, as a "general rule," we do "not consider an issue not passed upon below."[41] We follow suit here; as the district court did not address whether Bruno produced sufficient evidence to survive summary judgment on one or more of his LPLA claims, we decline to address it in the first instance and leave the merits of Bruno's claims to the district court.

\* \* \* \*

For the foregoing reasons, we VACATE the district court's summary judgment order and REMAND to the district court for further

---

[39] Under the LPLA, a manufacturer is "liable to a claimant for the damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person." *Marable*, 221 So. 3d at 893 (citing La. R.S. 9:2800.54(A)). "A product may be deemed 'unreasonably dangerous' in one of four ways: construction or composition, design, inadequate warning[,] or nonconformity with an express warranty." *Id.* (citing LA. RS 9:2800.54(B) and *Young v. Logue*, 94-0585, p. 30 (La. App. 4 Cir. 5/16/95), 660 So. 2d 32, 53). Bruno alleges Biomet's device is unreasonably dangerous for all four reasons, and Biomet argues Bruno failed to produce sufficient evidence that its device meets any of those conditions.

[40] *Taxotere*, 995 F.3d at 388.

[41] *Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) (quoting *Humphries v. Elliott Co.*, 760 F.3d 414, 418 (5th Cir. 2014)).

No. 22-30405

proceedings consistent with this opinion, including any additional discovery the district court may order.